THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JONATHAN RAYFORD, Appellant.—

The defendant, along with his codefendant Wayne Thompson, was convicted, after a joint jury trial, of robbery in the first degree and grand larceny in the fourth degree as a result of their alleged involvement in the robbery of a Brooklyn supermarket. For the reasons which follow, we conclude that reversal of the defendant's judgment of conviction is necessary.

We agree with the defendant's contention that the trial court committed reversible error in denying his request pursuant to People v Rosario (9 NY2d 286, cert denied 368 US 866; see also, People v Jones, 70 NY2d 547), that the People turn over the data analysis sheet (hereinafter DAS), which was compiled by the prosecution and which contained statements

made by two prosecution witnesses. Contrary to the People's position, the DAS did not consist merely of factual details of the crime (cf., People v Adger, 144 AD2d 475; People v Mills, 142 AD2d 653), but in fact consisted of witnesses' statements, which are subject to disclosure (People v Smith, 150 AD2d 275; People v Wright, 135 AD2d 594). Moreover, contrary to the People's contention, the DAS did not fall within the work product exemption of CPL 240.10 (2) (see, People v Smith, supra). Under these circumstances, a new trial is required.

We also conclude that the suppression court erred in denying that branch of the defendant's omnibus motion which was to suppress the showup identification which took place after the defendant and codefendant were transported back to the scene of the crime. The evidence adduced at the suppression hearing established that the police officers responded to a radio report of a robbery in progress at a supermarket located at 382 McDonald Avenue, Brooklyn. Upon their arrival at the scene, the police officers spoke to a number of individuals standing outside the supermarket and were given "a brief description" of the perpetrators. The perpetrators were described as two black males wearing gray and white shirts and black pants. The officers were also informed of the direction in which the perpetrators had fled. Approximately two blocks away from the scene of the crime, the officers observed two black males, later identified as the defendant and the codefendant, walking eastbound along Church Avenue. The codefendant was clad in a brown shirt and the defendant's shirt was black and gray. The officers pulled up behind the two men and directed them to stand against a nearby building and place their hands against the wall. The officers exited their car with guns drawn, approached the two men and conducted a frisk. No money or weapons were found. Thereafter, two employees of the supermarket were taken by the police to the area where the defendant and the codefendant had been detained. Upon viewing the two men, the first witness ran out of the patrol car and shouted: "That's them. That's them". When the police officer asked the second witness if he recognized the two men, the witness responded "Yeah, it looks like them". The defendant and the codefendant were then transported to the supermarket in the back seat of the police car where they were positively identified by two other witnesses, Gary McCarthy and Raymond Redeman.

In People v Riley (70 NY2d 523, 529), the Court of Appeals addressed the issue of showup identifications as follows: "Showup identifications, by their nature suggestive, are

strongly disfavored but are permissible if exigent circumstances require immediate identification *(People v Rivera,* 22 NY2d 453), or if the suspects are captured at or near the crime scene and can be viewed by the witness immediately *(People v Love,* 57 NY2d 1023). Generally, a showup identification will be inadmissible when 'there was no effort to make the least provision for a reliable identification and the combined result of the procedures employed' establish that the showup was unduly suggestive *(People v Adams,* 53 NY2d 241, 249)". Judged by this standard, we conclude that the second showup identification conducted by the police was unduly suggestive and should have been suppressed. The facts adduced at the suppression hearing clearly indicate that "exigent circumstances" existed to justify the initial showup identification at the scene of the defendants' detention. However, once that initial showup provided the police with an immediate identification of the alleged perpetrators as well as probable cause to place them under arrest, no "exigent circumstances" existed for the subsequent showup at the scene of the crime. Accordingly, the hearing court should have granted suppression of the second showup identification of the defendant made by McCarthy and Redeman.

In view of the absence of a finding by the suppression court as to whether the in-court identifications of the defendant by McCarthy and Redeman are supported by a source independent of the suggestive showup procedure, a hearing on this issue must be conducted prior to the defendant's retrial. We further note that the suppression court acted improperly in denying the request by the defendant, as well as that of the codefendant, to absent themselves from the courtroom during Redeman's identification testimony *(see, People v Anderson,* 16 NY2d 282; *People v Hubener,* 133 AD2d 233). Accordingly, upon remittitur, the defendant should be permitted to absent himself from the *Wade* hearing if he so desires. Mollen, P. J., Lawrence, Eiber and Kooper, JJ., concur.