Saad, P.J.
 

 i
 

 NATURE OF THE CASE
 

 Recently, the Michigan Supreme Court promulgated Michigan’s reciprocal criminal discovery rule, MCR
 
 *168
 
 6.201, which mandates, among other things, that a party provide the opposing party with “any written or recorded
 
 statement
 
 by a lay witness whom the party intends to call at trial” upon request by the opposing party. MCR 6.201(A)(2).
 

 This prosecutor’s appeal raises an issue of first impression under MCR 6.201(A)(2): does the term
 
 statement
 
 as used in this subrule include the attorneys’ notes of interviews with witnesses whom the attorney intends to call at trial?
 
 [1]
 
 Or, does the term
 
 statement
 
 carry its usual connotations, i.e., a narrative account that the witness either writes out and formally signs or adopts, or that the witness orally delivers for a verbatim transcription or recording? We hold that counsel's notes of an interview with a witness to be called at trial do not constitute a
 
 statement
 
 for purposes of mandatory disclosure under 6.201(A)(2). We reach this holding for the several important and interrelated reasons that we summarize here and elaborate on later in this opinion: (1) An attorney’s interview notes do not meet the definition of “statement” in the Michigan Court Rules. Although “statement” is not expressly defined in Chapter 6 (Criminal Procedure), it is defined in the rules of civil procedure, which are incorporated into the criminal discovery rule. Indeed, MCR 6.001(D) provides that the civil procedural rules apply to criminal proceedings except where otherwise indicated. Accordingly, to properly interpret Michigan’s reciprocal criminal
 
 *169
 
 discovery rule, we apply the following definition of “statement” from MCR 2.302(B)(3)(c):
 

 (i) a written statement signed or otherwise adopted or approved by the person making it; or
 

 (ii) a stenographic, mechanical, electrical, or other recording, or a transcription of it, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.
 

 On the basis of this definition, notes of an interview, except in the rare occasion where they would come within the purview of this definition, do not constitute a “statement” and are not subject to mandatory disclosure by either the prosecution or defense.
 

 (2) Unless the “statements” sought to be discovered meet the narrow definition of “statement” under MCR 2.302, mandatory disclosure of witness interview notes would run afoul of two deeply ingrained ethical and privilege rules:
 

 (A) Disclosure of an attorney’s witness interview notes would subject that attorney to being called as a witness to explain any disparities between her notes of her witness’ statement and the witness’ trial testimony. This would implicate MRPC 3.7, which provides that an attorney may not act as an advocate at a trial in which she is likely to be a necessary witness, except under narrow, specified circumstances.
 

 (B) Disclosure of interview notes would compromise protected work product under MCR 2.302(B)(3) because these notes invariably reflect an attorney’s mental impressions and strategies. Therefore, disclosure of these notes (unless they qualified as statements under MCR 2.302[B][3][c]) would compromise the work-product privilege, which this Court has
 
 *170
 
 already established applies in criminal proceedings as well as civil cases.
 
 Messenger v Ingham Co Prosecutor,
 
 232 Mich App 633; 591 NW2d 393 (1998);
 
 People v Gilmore,
 
 222 Mich App 442; 564 NW2d 158 (1997).
 

 (3) The goals of criminal discovery for both defense and prosecution are already well served by existing law and procedural rules, without taking an expansive reading of MCR 6.201(A)(2). MCR 6.201(A)(1) requires each party to disclose its trial witness list, enabling the opposing party to conduct its own interviews and take statements. The unique interests of the defendant also are amply protected by existing law and procedures: the defendant is never required to disclose his own statement, MCR 6.201(A)(2); the prosecutor is obliged to disclose exculpatory and mitigating information, MCR 6.201(B)(1); and the prosecutor also must fulfill special ethical responsibilities unique to prosecutors under MRPC 3.8.
 

 In this prosecutor’s appeal, the trial court declared a mistrial after the prosecutors refused to produce their notes of interviews with witnesses. The parties disagreed with respect to whether the notes were discoverable statements under MCR 6.201, and whether the notes were protected work product under MCR 2.302(B)(3). The trial court subsequently dismissed the case against defendant with prejudice. We reverse and remand for further proceedings.
 

 n
 

 FACTS AND PROCEEDINGS
 

 Defendant was charged with two counts of first-degree criminal sexual conduct.
 
 [2]
 
 The prosecution
 
 *171
 
 charged that defendant, a forty-year-old man, raped a fourteen-year-old girl after she became intoxicated at his home. The prosecution’s witness list included several persons who were to testify that defendant frequently invited teenage girls to his home, encouraged them to drink excessively, and touched them sexually while they were intoxicated. On the second day of trial, the prosecution called witness TS to testify about these bacchanals.
 
 [3]
 
 During cross-examination, defendant’s attorney questioned her about a conversation she had had in the hallway with Jennifer Mazzuchi, one of the prosecutors. The following colloquy took place:
 

 Q.
 
 Now, you discussed [with Mazzuchi] the testimony that you just gave, correct?
 

 A.
 
 Yes.
 

 Q.
 
 Did you review any police reports?
 

 A.
 
 No, just the statement that I gave.
 

 Q.
 
 Gave to whom?
 

 A.
 
 We—Mr. Wiese [the other prosecutor].
 

 Q.
 
 You gave a prior statement to Mr. Wiese prior to this trial?
 

 A.
 
 He had—I don’t know, he asked me what happened and I told him.
 

 Q.
 
 You gave—
 

 A.
 
 Like my—The questions that they just asked me, I answered them before this had happened and—
 

 Q.
 
 Okay. Was your statement written down?
 

 A.
 
 I think so, I don’t know, I’m sure.
 

 Q.
 
 Did they show—
 

 A.
 
 I just seen it, yeah.
 

 Q.
 
 Oh, you saw it?
 

 A.
 
 Well, it was typed out when, like, I don’t know.
 

 
 *172
 

 Q.
 
 This was a statement you gave to Mr. Wiese prior to today’s trial?
 

 A.
 
 Yes.
 

 Q.
 
 And you reviewed it with him this morning before your testimony, or with Ms. Mazzuchi?
 

 A.
 
 Yes.
 

 Mr. Juidici [defendant’s attorney]:
 
 Your Honor, I would like to ask the jury to be excused.
 

 Immediately following this exchange, defendant’s attorney moved to strike TS’ testimony and requested that the court “consider a mistrial.” He argued that TS’ testimony established that she had given a
 
 statement
 
 to the prosecutors before trial and that the prosecutors violated MCR 6.201 by failing to provide defendant with a copy of the
 
 statement.
 
 Defense counsel further argued that he was entitled to a copy of the notes under MRE 612 because TS and DN used them to refresh their memories before testifying.
 
 [4]
 
 In response, the prosecutors argued that notes they took during witness interviews were not “statements” for discovery purposes, and, in any event, the notes constituted protected attorney work product. As for MRE 612, the prosecutors argued that the witnesses did not use the notes to refresh memories, but
 
 *173
 
 rather to see what questions would be asked and to verify that the prosecutors had the correct information.
 

 The trial court incorrectly concluded that factual information obtained from witness interviews in the prosecutors’ notes was a statement subject to discovery and was not protected by the attorney work-product privilege.
 
 [5]
 
 The court ordered the prosecutors to redact portions of the notes relating to their mental impressions and then produce the notes for in camera review. The court stated that it would examine the notes to determine if they duplicated the police report, which defendant already possessed, in which case the discovery violation should be deemed harmless. As an alternative, the trial court gave the prosecutors the option of concurring in the mistrial motion and seeking appellate review of the issue. Finally, the court mistakenly ruled that the notes were also discoverable as documents used to refresh recollection under MRE 612.
 

 The prosecutors declined to submit their notes to the trial court, but instead exercised the option suggested by the trial court, i.e., to concur in the mistrial motion and seek appellate review. Thereafter, the court, in order to “facilitate appellate review” of the contested issues (see MCR 6.201[C][2][c]), took testimony from the two prosecutors and from the two prosecution witnesses who had allegedly used the prosecutors’ notes to refresh memories. The court
 
 *174
 
 ultimately dismissed the case with prejudice, reasoning that because defendant’s motion for a mistrial was prompted by the prosecutors’ misconduct in refusing to comply with the discovery rules, double jeopardy barred a retrial. The people now appeal from the order of dismissal.
 

 m
 

 ANALYSIS
 

 A. DISCOVERY OF WITNESS INTERVIEW NOTES
 

 1. STATEMENTS UNDER MCR 6.201
 

 MCR 6.201(A)(2) requires parties in criminal proceedings, upon request, to provide all other parties “any written or recorded
 
 statement
 
 by a lay witness whom the party intends to call at trial, except that a defendant is not obliged to provide the defendant’s own statement.” This appeal requires us to delineate the scope of this rule and specifically to give meaning to the term statement—a key term that is not expressly defined in the rules of criminal discovery.
 

 To date, this Court’s only reported decision that touches on this issue under MCR 6.201 is
 
 People v Tracey,
 
 221 Mich App 321; 561 NW2d 133 (1997). In
 
 Tracey,
 
 on the night before the trial, the complainant in a criminal sexual conduct case informed the prosecutor for the first time of a statement the defendant had made about his wife withholding sex.
 
 Id.,
 
 323. The defendant claimed that the prosecutor was obligated to disclose this “statement” to him. We noted that there was “no indication that the complainant’s conversation with the prosecutor the night before trial was written or recorded,” and concluded that “there was no obligation on the part of the prosecutor to disclose this
 
 unrecorded statement
 
 to defendant
 
 *175
 
 before trial under MCR 6.201.”
 
 Id.,
 
 324 (emphasis added). Though foreshadowing our holding today, the ruling in
 
 Tracey
 
 does not definitively or with specificity resolve the issue before us, because the
 
 Tracey
 
 Court did not squarely address whether a prosecutor’s written notes of her interview with a witness qualified as a written statement.
 

 Accordingly, we start our analysis with the specific inquiry: Do an attorney’s notes or any portion of the notes of interviews constitute “statements” within the meaning of MCR 6.201(A)(2)? This raises a question of court rule interpretation, which is subject to the same basic principles that govern statutory interpretation.
 
 Bush v Beemer,
 
 224 Mich App 457, 461; 569 NW2d 636 (1997). We construe a court rule in accordance with “the ordinary and approved usage of the language” and “in light of its purpose and the object to be accomplished by its operation.”
 
 Gilmore, supra,
 
 449.
 
 [6]
 

 MCR 6.201 states, in relevant part:
 

 (A) [A] party upon request must provide all other parties:
 

 (2) any
 
 written or recorded statement
 
 by a lay witness whom the party intends to call at trial, except that a defendant is not obliged to provide the defendant’s own statement .... [Emphasis added.]
 

 
 *176
 
 Resolution of the issue before us turns on the definition of the term “statement” as it is used in this rule. As we noted above, neither MCR 6.201 nor any of our criminal procedure rules expressly define statement. However, MCR 6.001(D) provides:
 

 The provisions of the rules of civil procedure apply to cases governed by this chapter, except
 

 (1) as otherwise provided by rule or statute,
 

 (2) when it clearly appears that they apply to civil actions only, or
 

 (3) when a statute or court rule provides a like or different procedure.
 

 Therefore, we look to the civil discovery rule that defines statement. MCR 2.302 provides that both parties and nonparties may obtain from other parties a “statement concerning the action or its subject matter previously made by the person making the request.” MCR 2.302(B)(3)(b). In conjunction with this provision, MCR 2.302(B)(3)(c) expressly defines “statement” as:
 

 (i) a written statement signed or otherwise adopted or approved by the person making it; or
 

 (ii) a stenographic, mechanical, electrical, or other recording, or a transcription of it, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.
 

 We conclude that under MCR 6.001(D), this precise definition of “statement” is incorporated by reference into MCR 6.201(A)(2).
 

 None of the exceptions stated in MCR 6.001(D) apply. With respect to MCR 6.001(D)(1), no rule or statute provides that this definition does not apply to criminal discovery. MCR 6.001(D) merely provides
 
 *177
 
 that “[depositions and other discovery proceedings under subchapter 2.300 may not be taken for the purposes of discovery in cases governed by this chapter.” This exception merely precludes parties in criminal proceedings from utilizing the discovery methods of subchapter 2.300; it is not broad enough to exclude the remaining provisions of subchapter 2.300 from criminal discovery. Significantly, MCR 2.302(B)(3)(c) is part of the work-product privilege rule for civil discovery. This Court has previously recognized that the civil work-product rule governs criminal discovery as well.
 
 Messenger, supra,
 
 640;
 
 Gilmore, supra,
 
 453. Accordingly, the rule regarding the definition of “statement” for purposes of civil discovery is applicable in criminal cases.
 

 With respect to MCR 6.001(D)(2), it does not “clearly appear” to us that the definition of “statement” applies only to civil actions. As for MCR 6.001(D)(3), no court rule or statute provides a “like or different” definition of “statement.” We therefore conclude that under MCR 6.001(D), the precise definition of “statement” from the civil discovery rules applies to the criminal discovery rules as well.
 

 The federal criminal discovery rule, F R Crim P 26.2(f), includes a substantially similar definition of statement:
 

 (1) a written statement made by the witness that is signed or otherwise adopted or approved by the witness; (2) a substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and that is contained in a stenographic, mechanical, electrical, or other recording or transcription thereof; or (3) a statement, however taken or recorded, or a transcription thereof, made by the witness to a grand jury.
 

 
 *178
 
 See also
 
 Goldberg v United States,
 
 425 US 94; 96 S Ct 1338; 47 L Ed 2d 603 (1976), interpreting 18 USC 3500(e) (Jencks Act), now incorporated into F R Crim P 26.2. (One distinction, which is not material to this inquiry, is that the federal rule provides for discovery of a witness’ statement only after that witness has testified.) When MCR 6.201 is read in conjunction with MCR 2.302(B)(3)(c), it is comparable to the federal rule. Though not binding on this Court, we may look to federal cases for guidance in interpreting MCR 6.201.
 
 People v McEwan,
 
 214 Mich App 690, 697; 543 NW2d 367 (1995).
 

 In
 
 Goldberg,
 
 the defendant contended that the prosecutors’ handwritten notes of interviews with the key prosecution witness were discoverable statements under the Jencks Act. The Supreme Court held that the notes would be statements
 
 as long as
 
 the witness signed them or adopted or approved the notes as his own statements, and remanded to the trial court for appropriate findings.
 
 Goldberg, supra,
 
 111. The converse is clearly true: if the witness
 
 did not
 
 sign or adopt the notes as his statements, the notes would not be discoverable, despite the fact that the prosecutor was making notes of the statements during the interview.
 
 [7]
 

 Accordingly, only written witness statements that have been signed or otherwise adopted or approved by the persons who made them, MCR 2.302(B)(3)(c)(i), and verbatim recorded statements
 
 *179
 
 as described in MCR 2.302(B)(3)(c)(ii) qualify as “statements” under MCR 6.201(A)(2). Interview notes taken by lawyers rarely satisfy this definition. Typically, interview notes contain rough paraphrases, summaries, and highlights of the witness’ comments, filtered through the attorney’s own subjective impressions of the witness. See also
 
 Robinson v State,
 
 693 NE2d 548, 552-553 (Ind, 1998) (distinguishing near-verbatim statement, which is discoverable, from nondiscoverable police notes that merely contain occasional quotation). Unless the “notes” were a “substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded,” or unless the witness signed or adopted the notes as his statement, they are not subject to disclosure under MCR 6.201(A)(2). See
 
 United States v McVeigh,
 
 954 F Supp 1454, 1456-1457 (D Colo, 1997);
 
 United States v Cox,
 
 836 F Supp 1189 (D Md, 1993).
 

 This raises the question of what constitutes adopting the notes as one’s “statement” where, as here, the witness merely checked the notes for inaccuracies and for information about what questions the prosecutor would ask. For this purpose, we look to and agree with the concurring opinion of Justice Stevens in
 
 Goldberg, supra,
 
 115-116:
 

 General testimony that some of the notes taken by the prosecutor during a lengthy interrogation were read back to the witness, and that the witness sometimes assented to the prosecutor’s version of what he said, would not justify a finding of approval of any particular note. Fairness to the witness demands a much stricter test of approval before he may be confronted with assertedly prior inconsistent statements.
 

 ... In order to avoid the risk of unseemly testimony by trial counsel and, more importantly, in order to avoid
 
 *180
 
 unfairness to the witness, any determination that a portion of the prosecutor’s notes is producible must be supported by a finding of unambiguous and specific approval by the witness.
 

 As discussed more thoroughly below, requiring this threshold of proof with respect to a witness’ “adoption” of notes as his “statement” will help preserve both the work-product privilege and the ethical prohibition against attorneys testifying in trials where they are also advocates.
 

 Here, TS and DN merely indicated that they reviewed the prosecutors’ notes in order to alert the prosecutors to any inaccuracies and to review what questions would be asked at trial. This does not constitute “adoption” under Justice Stevens’ test—a test that we specifically adopt. The trial court therefore erred in ruling that the notes constituted a discoverable statement. For this reason alone, we reverse the trial court’s ruling, reinstate the charges against defendant, and remand to the trial court for further proceedings consistent with this opinion.
 

 2. WORK-PRODUCT PRIVILEGE AND ETHICAL CONSIDERATIONS
 

 Defendant urges us to adopt a broad interpretation of MCR 6.201(A)(2), by extending the word “statement” to cover even the summaries, paraphrases, and highlights of witness interviews that appear in the opposing attorney’s notes. We have already determined that defendant’s position must be rejected as contrary to our court rules. We now discuss why defendant’s proposed interpretation is untenable in light of Michigan’s work-product privilege and ethical rules under the Michigan Rules of Professional Conduct.
 

 
 *181
 
 Michigan’s work product rule, MCR 2.302(B)(3), provides:
 

 [A] party may obtain discovery of documents and tangible things otherwise discoverable under [MCR 2.302](B)(1)[ and prepared in anticipation of litigation or for trial by or for another party or another party’s representative . . . only on a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means.
 
 In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
 
 [Emphasis added.]
 

 “The rule guarding attorney work product from civil discovery applies equally to the prosecutor’s work product, whether in conjunction with representing the people of the state in criminal proceedings, as chief legal representatives of their respective counties in all civil and criminal matters, ... or as the state’s agent for effectuation of the obligations of
 
 parens patriae
 
 in matters concerning the custody or welfare of children . . . .”
 
 Messenger, supra,
 
 640.
 

 The work-product rule is implicitly incorporated into MCR 6.201. In addition to MCR 6.001, which generally applies civil procedure rules to criminal cases, MCR 6.201(C) provides, in pertinent part:
 

 (1) Notwithstanding any other provision of this rule, there is no right to discover information or evidence that is protected from disclosure by constitution, statute, or
 
 privilege.
 
 [Emphasis added.]
 

 We stated in
 
 Messenger, supra,
 
 and
 
 Gilmore, supra,
 
 that under MCR 6.201(C), the work-product privilege
 
 *182
 
 “applies in the context of criminal proceedings to the work product of the prosecutor.”
 
 Gilmore, supra,
 
 453. We now consider how and why the work-product privilege applies to witness interview notes.
 

 In
 
 Gilmore,
 
 an altercation took place between the defendant and a park ranger. Both the defendant and the park ranger filed criminal assault complaints against each other, but the prosecutor pursued charges only against the defendant.
 
 Id.,
 
 445-447. The defendant sought discoveiy of the prosecutor’s disposition record for his complaint against the park ranger. The
 
 Gilmore
 
 Court concluded that the disposition record was not discoverable because it was protected work product.
 
 Id.,
 
 454-456. In reaching this conclusion, the
 
 Gilmore
 
 Court relied extensively on the seminal case of
 
 Hickman v Taylor,
 
 329 US 495; 67 S Ct 385; 91 L Ed 451 (1947):
 

 In preparing a criminal case, a prosecutor or defense attorney must assemble and sift through information, prepare legal theories, and plan strategy, just as a civil attorney would. As in
 
 Hickman,
 
 waste and inefficient use of resources would occur in criminal cases if counsel were allowed access to work product because “much of what is now put down in writing would remain unwritten.”
 
 Id.
 
 at 511. Also, a similar deleterious effect would occur in criminal cases from the invasion of privacy of an attorney’s mental processes and trial preparation in criminal cases.
 
 Id.
 
 Accordingly, the policy considerations set forth in
 
 Hickman
 
 are also implicated in the criminal context with respect to a prosecutor’s work product.
 
 [Gilmore, supra,
 
 452-453.]
 

 Because the
 
 Gilmore
 
 Court was so heavily influenced by
 
 Hickman,
 
 we look to
 
 Hickman’s
 
 rationale for precluding discovery of witness interview notes. The
 
 Hickman
 
 Court stated as follows:
 

 
 *183
 
 Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney. Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients.
 
 In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client’s case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.
 
 That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients’ interests.
 
 This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the “work product of the lawyer.”
 
 Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney’s thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interest of the clients and the cause of justice would be poorly served.
 
 [Id.
 
 (emphasis added).]
 

 Clearly, notes of witness interviews unquestionably qualify as work product under this description. The United States Supreme Court observed in
 
 Upjohn Co v United States,
 
 449 US 383, 399; 101 S Ct 677; 66 L Ed 2d 584 (1981), that under the work-product privilege, “[f]orcing an attorney to disclose notes and memoranda of witnesses’ oral statements is particularly disfavored because it tends to reveal the attor
 
 *184
 
 ney’s mental processes . . . The Court further noted that “notes of conversation with witness ‘are so much a product of the lawyer’s thinking and so little probative of the witness’s actual words that they are absolutely protected from disclosure.’ ”
 
 Id.,
 
 401 (quoting
 
 In re Grand Jury Investigation,
 
 412 F Supp 943, 949 [ED Pa, 1976]).
 

 It is illuminating that the United States Supreme Court in
 
 Goldberg
 
 rejected the government’s argument that a witness “statement” (under the Jencks Act’s restrictive definition) was
 
 not
 
 protected work product because the Jencks Act’s narrow definition of statement obviated the need for the work-product privilege:
 

 Proper application of the [Jencks] Act will not compel disclosure of a Government lawyer’s recordation of mental impressions, personal beliefs, trial strategy, legal conclusions, or anything else that “could not fairly be said to be the witness’ own” statement. . . . Thus, the primary policy underlying the work-product doctrine—i.e., protection of the privacy of an attorney’s mental processes is adequately safeguarded by the Jencks Act itself.
 
 [Goldberg, supra,
 
 106 (citations omitted).]
 

 We infer from this holding that written interview notes that do not meet the restrictive definition of statement
 
 are
 
 in need of, and have, work-product protection because, as discussed above, they are permeated with the attorney’s mental processes. See also
 
 State v Usenia,
 
 599 A2d 1026 (RI, 1991), for a similar analysis under state law.
 
 [8]
 

 
 *185
 
 Were we to subject the interview notes to mandatory discovery, we would subvert the processes protected by the work-product doctrine and disrupt both parties’ trial preparations.
 
 [9]
 
 We therefore conclude that interview notes that do not meet the specific MCR 2.302 definition of “statement,” in addition to being outside the reach of MCR 6.201(A)(2), are also protected by Michigan’s work-product privilege. We do not rule or express any opinion with regard to how the work-product privilege applies to statements that do fall within the MCR 2.302 definition, because this issue is not before us.
 

 Closely related to the work-product issue is the ethical prohibition against attorneys acting as both advocates and witnesses in the same trial.
 
 [10]
 
 MRPC 3.7 provides, in pertinent part:
 

 
 *186
 
 (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:
 

 (1) the testimony relates to an uncontested issue;
 

 (2) the testimony relates to the nature and value of legal services rendered in the case; or
 

 (3) disqualification of the lawyer would work substantial hardship on the client.
 

 This rule is especially salient in criminal cases. In
 
 United States v Birdman,
 
 602 F2d 547 (CA 3, 1979), the court offered four reasons why our justice system would be undermined if prosecutors could serve the dual roles of trial advocate and witness: (1) the risk that a prosecutor would not be a fully objective witness, (2) the prosecutor’s position may artificially enhance his credibility, (3) jurors might fail to differentiate between the prosecutor’s testimony and argument, and treat the latter as evidence, and (4) public confidence in the administration of justice could be undermined.
 

 If an attorney’s witness interview notes were subject to disclosure, prosecutors and defense attorneys might be forced to choose between investigating a
 
 *187
 
 case and assuming the role of advocate. If trial counsel’s witness interview notes were discoverable, a likely scenario would be one party calling opposing counsel to explain discrepancies surrounding the notes. In
 
 Goldberg,
 
 the United States Supreme Court considered, and rejected, the government’s argument that
 
 statements
 
 (again, under the restrictive definition in the Jencks Act) should not be discoverable because of the risk that attorneys would be called to testify. The Court held that there was not a risk that the attorney would be called as a witness because statements are produced only where they can “fairly be said to be the witness’ own” words.
 
 Goldberg, supra,
 
 107. Again, it can be inferred from this passage that the potential ethical conflict in
 
 Goldberg
 
 was averted only because the attorney interview notes in question satisfied the restrictive definition. Conversely, if the notes did not meet that definition, discovery would have been objectionable because of the inherent potential for an ethical conflict. The potential for this dilemma further bolsters our conclusion that interview notes are not discoverable under MCR 6.201(A)(2).
 

 Subjecting witness interview notes to disclosure could force criminal practitioners to divide responsibilities between lawyers who investigate and prepare the case and lawyers who try the case. Because this is not a situation attorneys would be able to anticipate, attorneys who intend to both interview witnesses before trial and act as trial advocate would face the specter of disqualification in the event opposing counsel found a discrepancy in the notes. Sole practitioner defense attorneys and small prosecutor offices would find it especially onerous to
 
 *188
 
 divide investigation and advocacy duties.
 
 [11]
 
 Because adoption of defendant’s interpretation could ultimately lead to so many burdens on criminal practitioners, policy considerations militate against an expansive reading of MCR 6.201.
 

 Additionally, we see no compelling policy reason to adopt defendant’s position. Both sides in a criminal proceeding already benefit from the liberal, reciprocal discovery afforded by MCR 6.201 and due process requirements. This includes discovery of “the names and addresses of all lay and expert witnesses whom the party intends to call at trial.” MCR 6.201(A)(1). This enables parties to arrange their own interviews with the opposing parties’ trial witnesses. Also, the law affords substantially more protection for criminal defendants. Prosecutors must provide each defendant with any exculpatory information or evidence known to them. MCR 6.201(B)(1); MRPC 3.8(d);
 
 Brady v Maryland,
 
 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Prosecutors must also disclose mitigating information in connection with sentencing. MRPC 3.8(d). The court rule allows a defendant the opportunity to obtain privileged records in certain circumstances. MCR 6.201(C). Moreover, defendants have an additional advantage because prosecutors are ethically bound to act as “a minister of justice and not simply that of an advocate.” MRPC 3.8, comment. Indeed, under the Michigan Rules of Professional Conduct, prosecutors shoulder responsibilities that
 
 *189
 
 are not reciprocal with defense attorneys and that do not have counteiparts in civil actions. MRPC 3.8. For example, a prosecutor must refrain from prosecuting a charge that she knows is not supported by probable cause, MRPC 3.8(a); she must make reasonable efforts to assure that the accused has been advised of his right to representation, MRPC 3.8(b); and she may not attempt to obtain waiver of important pretrial rights from an unrepresented defendant, MRPC 3.8(c).
 

 To conclude with regard to the question of the discoverability of an attorney’s notes of her interviews with witnesses, we summarize our holding:
 

 (1) An attorney’s interview notes with witnesses intended to be called at trial are not “statements” wdthin the definition provided by our discovery rules. Accordingly, neither side is obligated to provide these notes pursuant to a request under MCR 6.201(A)(2).
 

 (2) In addition to those reasons expressed in section m A l of this opinion, we rule against discoverability of witness interview notes for the closely related reasons of the work-product privilege, MCR 2.302(B)(3)(a) (incorporated into the criminal discovery rules by MCR 6.201[C]), and the ethical considerations provided by MRPC 3.7.
 

 (3) This case does not raise the issue of how the work-product privilege (MCR 2.302[B][3][a]; MCR 6.201 [C]) affects requests for witness statements under MCR 6.201(A)(2) when the statements in question satisfy the definition of MCR 2.302(B)(3)(c). Because this issue is not before us, we decline to analyze it or to express any opinion regarding it.
 

 
 *190
 
 B
 

 WRITINGS USED TO REFRESH RECOLLECTION
 

 The people also argue that the trial court abused its discretion in ruling that defendant was entitled to review the prosecutors’ notes under MRE 612. We agree.
 

 MRE 612 states, in part, as follows:
 

 (a)
 
 While Testifying.
 
 If, while testifying, a witness uses a writing or object to refresh memory, an adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying.
 

 (b)
 
 Before Testifying.
 
 If, before testifying, a witness uses a writing or object to refresh memory for the purpose of testifying and the court in its discretion determines that the interests of justice so require, an adverse party is entitled to have the writing or object produced, if practicable, at the trial, hearing, or deposition in which the witness is testifying.
 

 Here, only subrule b applies.
 

 The trial court’s ruling was incorrect because MRE 612 is inapplicable. The record establishes that the witnesses did not use the notes to refresh their memories. Contrary to the trial court’s determination, the record does not establish that either DN or TS used the prosecutors’ notes to refresh their memories in preparation for their testimony. Rather, the prosecutors simply reminded the witnesses of the nature of the testimony they would elicit on direct examination. We find that the trial court misconstrued the testimony given at the “record development hearing” held after the trial court’s declaration of a mistrial. At that hearing, the following exchange occurred between DN and the trial court:
 

 Q.—did you have a chance to read anything like the police report or any statements or anything?
 

 
 *191
 

 A.
 
 She [the prosecutor] just went over and made sure that I said the right, I put down, told them the right story.
 

 Q.
 
 Now, when you say, “She went over it,” can you tell me in a little more detail exactly how that worked?
 

 A.
 
 She just said, “Now, this is all right, right?” And I just said, “Yeah.”
 

 Q.
 
 Was she referring to some piece of paper that she had?
 

 A.
 
 Yeah. It was the police report, or report, or something, I don’t know.
 

 Q.
 
 ... So she had a piece of paper of some kind there?
 

 A.
 
 Um-hmn. Yes.
 

 Q.
 
 And she would say, “Now, is this correct?” And then she’s what —
 

 A.
 
 Yeah.
 

 Q.
 
 —tell you what was in the paper or read from it, could you tell?
 

 A.
 
 No, she would let me read it and then I just said yes.
 

 Subsequently, TS testified as follows:
 

 Q.
 
 [W]hen you indicated that you were reviewing what you were going to testify to this morning, could you describe what you mean by reviewing?
 

 A.
 
 She basically had told me the questions that would be asked, and that’s about it. She just told me to read it and make sure that everything was correct, and that there was nothing that was wrong, or make sure that everything was right.
 

 After TS, Jennifer Mazzuchi (one of the prosecutors) testified:
 

 A.
 
 ... I pointed to a couple of things that were in my notes, namely, one was the incident with changing the T-shirts. I pointed to that on my notes and said, “I’m going to ask you about this.” I pointed to a couple of other things that I planned to ask her about. I told her some general things about testifying, that I said, “I you know, as far as the substance, you don’t have to worry about your answer, just tell the truth,” is what I told her. . . .
 

 
 *192
 

 Q.
 
 Okay. With regard to [TS], would you characterize your session with her [as] one that was necessary to refresh her recollection for testifying here today?
 

 A.
 
 I would not. I had about five minutes, I would estimate, with her. My characterization of the purpose of that meeting is to go over what we’re going to cover at trial. I wasn’t asking her to remember events. I was basically indicating what I was going to be asking her about.
 

 Finally, Matthew Wiese, the other prosecutor, testified. He indicated that when he spoke with DN before she was supposed to have testified, he used his notes only to let her know which questions he would be asking.
 

 The foregoing testimony establishes that TS and DN did not review the prosecutors’ notes to refresh their memories. Instead, they reviewed the notes so that they would know which questions would be asked of them and so that they could verify the notes’ accuracy. Because the notes were not used to refresh the witnesses’ memories, MRE 612 was inapplicable and defendant was not entitled to view the notes. Therefore, we need not, and thus do not, consider whether these notes would have been subject to disclosure under MRE 612 if the witnesses had actually used them to refresh memories, or whether the work-product privilege would have precluded disclosure.
 

 c
 

 DOUBLE JEOPARDY AND RETRIAL OF DEFENDANT
 

 Finally, we conclude that the trial court erred in dismissing the charges against defendant with prejudice. The trial court granted defendant’s motion to dismiss with prejudice because it believed the prosecutors had committed misconduct “regardless of their motives . . . .” Because we have concluded that
 
 *193
 
 the prosecutors’ position was legally correct, the mistrial was not warranted, and we need not resolve the double jeopardy issue. In any event, double jeopardy would not bar retrial in this case because there is no indication that the prosecutors intended to provoke a mistrial. As stated in
 
 People v Dawson,
 
 431 Mich 234, 257; 427 NW2d 886 (1988), and quoted in
 
 Tracey, supra,
 
 326:
 

 Retrials are an exception to the general double jeopardy bar. Where a mistrial results from apparently innocent or even negligent prosecutorial error, or from factors beyond [the prosecutor’s] control, the public interest in allowing a retrial outweighs the double jeopardy bar. The balance tilts, however, where the judge finds, on the basis of the “objective facts and circumstances of the particular case,” that the prosecutor
 
 intended to goad the defendant into moving for a mistrial.
 
 [Emphasis added.]
 

 Here, the prosecutors were arguing in good faith for what they believed to be a valid interpretation of the discovery rules, and which has turned out to be the correct interpretation. Even if we were to conclude that the trial court’s ruling was legally correct, we would not bar retrial.
 

 Reversed and remanded for retrial and further proceedings in accordance with this opinion. We do not retain jurisdiction.
 

 [1]
 

 MCR 6.201(A)(2) applies only to witnesses whom the party intends to call at trial. Accordingly, throughout this opinion, the term “witness” refers to a person the attorney intends to call as a witness as trial. As a practical matter, these will usually be the same persons listed and disclosed as intended trial witnesses pursuant to MCR 6.201(A)(1).
 

 [2]
 

 MCL 750.520b; MSA 28.788(2).
 

 [3]
 

 We refer to the minor witnesses by their initials to protect their identity.
 

 [4]
 

 Defendant also argued that the corridor conversation between Mazzuchi and TS violated the sequestration order. The court ruled that the sequestration order had not been violated, and defendant has apparently abandoned this argument on appeal. Although this issue is not formally before us, we will briefly comment on it because defendant’s counsel raised it during oral argument. There is clearly nothing inappropriate with a prosecuting attorney conferring with a witness about anticipated testimony. Defendant wrongfully insinuated that the hallway discussion was unethical. We view this accusation as inappropriate because a prosecutor, like any other lawyer, has an ethical and professional duty to prepare her case, which necessarily includes preparation of witnesses. That prosecutors have higher ethical obligations does not mean they have a lesser obligation to prepare their cases competently.
 

 [5]
 

 The trial court was somewhat inconsistent, since it later stated “... if there’s a written record of what the content of the conversation was, well, I guess I don’t know whether that would be considered a statement of the witness or whether it’s considered your notes” Later, however, it returned to its original conclusion—that the writings must be given to the defense.
 

 [6]
 

 Additionally, it is well established that if two statutes lend themselves to a construction that avoids conflict, that construction should control.
 
 House Speaker v State Administrative Bd,
 
 441 Mich 547, 568-569; 495 NW2d 539 (1993). Similarly, we should construe a court rule so as to avoid conflict with other court rules and the Michigan Rules of Professional Conduct.
 

 [7]
 

 Several of our sister states whose criminal discovery statutes and court rules are patterned after the federal rule have also held that interview notes are not discoverable statements. See, for example,
 
 Bohannon v State,
 
 230 Ga App 829; 498 SE2d 316 (1998);
 
 Williams v State,
 
 940 SW2d 802 (Tex App, 1997);
 
 Williamson v Dugger,
 
 651 So 2d 84 (Fla, 1994).
 

 [8]
 

 The various states have widely divergent views regarding the applicability of the work-product privilege in criminal procedure, ranging from Nevada, which has a broad work-product privilege statute for criminal cases (Nev Rev Stat 174.245;
 
 Lisle v State,
 
 113 Nev 679; 941 P2d 459
 
 *185
 
 [1997]), to California, which has held that “civil discovery procedure,” including the work-product doctrine, “has no relevance to criminal prosecutions.”
 
 Robinson v Superior Court of Los Angeles Co,
 
 76 Cal App 3d 968, 978; 143 Cal Rptr 328 (1978). Many states have attempted to strike a balance by holding that portions of a prosecutor’s notes that reflect the factual content of the witness’ statements are discoverable, but that portions of the notes relating to the prosecutor’s theories, strategies, and so forth, are protected work product, which may be redacted before discovery. See, for example,
 
 State v Chagnon,
 
 139 NH 671; 662 A2d 944 (1995);
 
 State v Gallup,
 
 108 Or App 508; 816 P2d 669 (1991);
 
 State v Yates,
 
 111 Wash 2d 793; 765 P2d 291 (1988);
 
 People v Boclair,
 
 119 Ill 2d 368; 116 Ill Dec 545; 519 NE2d 437 (1987);
 
 State v Garcia,
 
 45 Wash App 132; 724 P2d 412 (1986). As a practical matter, we do not believe this distinction is clear cut (see
 
 Goldberg, supra)
 
 and would probably lead to endless legal wrangles over which portions of the notes are work product and which are not.
 

 [9]
 

 Here, the trial court correctly recognized that any portions of the notes that contained the prosecutor’s mental impressions, theories, opinions, and so forth, are protected work product under MCR 2.302(B)(3)(a). The trial court was incorrect, however, in its ruling that the remaining portions of the notes were not protected work product and were
 
 statements
 
 under MCR 6.201(A)(2).
 

 [10]
 

 We acknowledge that several jurisdictions have adopted an expansive definition of “statement” with regard to criminal discovery and have held
 
 *186
 
 that interview notes are discoverable statements. See
 
 Thompson v Superior Court of Los Angeles Co,
 
 53 Cal App 4th 480; 61 Cal Rptr 2d 785 (1997) (“raw notes” of witness interview constitute statements);
 
 State v Chagnon,
 
 n 8,
 
 supra,
 
 (defendant’s investigator’s notes of interview with witness were discoverable under rule requiring disclosure of statements);
 
 People v Rayford,
 
 158 AD2d 482; 551 NYS2d 257 (1990) (witnesses’ statements contained in Data Analysis Sheet were discoverable);
 
 People v Boclair,
 
 n 8,
 
 supra,
 
 (statements include notes “which could fairly be said to be witness’ own words”);
 
 People v Szabo,
 
 113 Ill 2d 83; 100 Ill Dec 726; 497 NE2d 995 (1986), (“fact that the notes contain paraphrases if the witness’ statements instead of the witness’ own words does not prevent the notes from being substantially verbatim reports of oral statements”);
 
 State v Garcia,
 
 n 8,
 
 supra,
 
 (statements might be found in prosecutor’s notes). We do not believe that any of these decisions fairly considered the ethical implications of this interpretation.
 

 [11]
 

 As the Prosecuting Attorneys Association points out in its amicus brief, Great Britain formally divides these responsibilities between the solicitors who investigate and prepare cases, and the barristers who try them. American jurisprudence has not opted to emulate this aspect of the British system. It would be absurd to indirectly create a barrister-solicitor system in Michigan on the basis of a court rule interpretation.