*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SAMUEL WASHINGTON,

      Defendant-Appellant.

UNPUBLISHED
November 15, 2024
8:55 AM

No. 367055
Wayne Circuit Court
LC No. 05-000526-01-FH

Before: JANSEN, P.J., and RICK and PATEL, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his bench-trial convictions of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and felon in possession of a firearm (felon-in-possession), MCL 750.224f. The trial court sentenced defendant to the mandatory two years' imprisonment for the felony-firearm conviction. He was not sentenced to jail time for the felon-in-possession conviction, but was ordered to pay $1,566 in costs and fines. We affirm.

## I. FACTUAL BACKGROUND

On New Year's Eve 2004, Detroit Police Officer Jason McDonald and his partner conducted a traffic stop of a Chrysler Sebring sedan. The officers had received a call for backup concerning shots fired from a black Chevrolet Corsica, and observed the Sebring, also a black sedan, in the area where the Corsica was reported. Rafael Jackson was the driver of the vehicle, Kenneth Alford was in the front passenger seat, and defendant sat in the rear passenger seat. As Officer McDonald approached the vehicle, he saw what appeared to be a semiautomatic handgun under defendant's right foot. All three men were arrested as a result of the stop.

---

[1] *People v Washington*, unpublished order of the Court of Appeals, entered November 14, 2023 (Docket No. 367055).

Defendant was charged with felon in possession, felony-firearm, carrying a concealed weapon, MCL 750.227, and possession of marijuana, MCL 333.7403(2)(d).[2] Defendant waived his right to trial by jury, and the trial court held a bench trial in May 2005. A record of Officer McDonald's interrogation of defendant, signed by defendant, was presented at trial. The interrogation record indicated that defendant told Officer McDonald that he was sitting in the backseat and that the gun was also in the backseat. When asked whose gun it was, defendant responded, "I have no idea." Notably, Officer McDonald testified at trial that he told defendant where the gun was found prior to taking the interrogation statement.

Jackson and Alford both testified they were unaware that there were any weapons in the vehicle until the police informed them that they found a gun. When challenged as to whether he knew anything about the gun, Alford responded as follows:

> *Q*. Okay. Did you, did you state something different to me, a couple of weeks ago?
>
> *A*. No, sir.
>
> *Q*. Okay. You also were interviewed approximately, about two days ago, do you remember that?
>
> *A*. Yes, sir.
>
> *Q*. Okay. And do you recall stating that the gun was yours?
>
> *A*. No, sir.
>
> *Q*. What kind of gun was it?
>
> *A*. I really don't know. It was a little gun, like a two-five.
>
> * * *
>
> *Q*. How, how is it that you know that this gun was a twenty-five caliber gun?
>
> *A*. Well, actually, . . . I don't know.
>
> * * *
>
> *Q*. You said that the gun . . . that was . . . under the seat was a small gun, right?

---

[2] After the prosecution rested, the trial court dismissed the marijuana charge because the prosecution had failed to analyze the substance seized from defendant's person.

*A*. I was just guessin'. It had to be, if it was under the seat.

* * *

*Q*. The, the Officer never showed you the gun, after it was recovered?

*A*. I mean, once we got in the Precinct.

* * *

*Q*. Did—when you went back to the Police station, the Officer showed you the gun?

*A*. No, he didn't show us the gun. I over heard 'em talkin' about the gun, and I just assumed it was a two-five, 'cause that's what I heard.

Defendant testified that he did not see the gun in the vehicle because it was dark, and there was trash on the floor of the car. Defense counsel started to ask defendant about the statement he made to Officer McDonald after his arrest, and the following exchange took place:

*Q*. He also asked you about a gun in the vehicle?

*A*. Yes, sir.

*Q*. . . . What, what did you state with reference to the gun?

*The Court*: Well, he's already said, right here.

You don't need to go back to the statement.

He stated right here, under oath, he didn't know it was there, and had nothing to do with it.

* * *

*The Court*: [I]t's a statement that, the People put it in, but he didn't say anything, or admitted, that he knew anything about a gun.

He said the same thing, now.

So, why go over it twice[?]

Under cross-examination, defendant testified that the police told him where they found the gun before the interrogation statement was taken.

After closing argument, the following exchange occurred between defense counsel and the trial court:

-3-

*The Court*: Since you brought in those other two people, . . . if they hadn't been brought in here, there would be some logical argument that one of them might have known.

But they testified.

They didn't see a gun taken.

They didn't know a gun was taken.

They knew absolutely nothing about it.

And actually, they don't even know where the gun was taken out of the car.

So, their testimony is absolutely, totally—

[*Defense Counsel*]: It, it—Judge, I would agree, except for one thing.

*The Court*: What?

[*Defense Counsel*]: The second witness, curiously enough, . . . blurts out, and I didn't, despite all the leading questions that—

*The Court*: You called him.

[*Defense Counsel*]: I called him.

He mentions that the gun is a twenty-five.

He mentions that it's a small gun, and, and he's got, obviously, some intimate knowledge about the gun.

*The Court*: Mm-hmm.

[*Defense Counsel*]: Well, you know . . . , Judge, I think, that raises . . . some doubt as to whether or not he actually was the person who had the gun.

And of course, he's not gonna come in here, Judge, and say, the gun is mine.

*The Court*: Well, you called him, Mr. Jones.

Of course, he's not gonna say that.

So, what good was his testimony?

[*Defense Counsel*]: Judge, that's not what I thought his testimony was—

*The Court*: I know.

[*Defense Counsel*]: I was very surprised.

I thought he was gonna come in, and tell the truth.

But instead, he slips up, Judge, and he admits, he knows what type of gun it is, . . . and not just that it's a small gun.

He says, it's a twenty-five.

*The Court*: The reason he knew what kind of gun it was, they were all up there blasting away because it was New Year's Eve.

And somebody called the police.

And your client was in the backseat, with his foot, trying to hide the gun when the Police [show] up.

I find him guilty of [felon in] possession, and felony firearm.

The sentencing hearing was scheduled for a month later. Defendant failed to appear at the hearing and was not sentenced. Eventually, the law caught up with defendant. Sixteen years post-trial, he was finally arraigned for his failure to appear. Defendant moved for a new trial, arguing that he was denied due process because the trial court prevented him from offering rebuttal testimony regarding his statement to Officer McDonald. Defendant also asserted that his trial attorney could provide testimony regarding his pretrial interview with Alford, which was newly discovered evidence that contradicted Alford's trial testimony. Defendant stated that the proposed testimony would show that Alford told defense counsel before trial that the gun was his, he had possession of it when the traffic stop was initiated, and he shoved it under the front passenger seat. Defendant additionally argued he was entitled to relief because the trial court's articulation of its findings of fact and conclusions of law were insufficient. The trial court denied the motion. It found that newly discovered evidence did not make a different result probable on retrial. Further, concerning the adequacy of its articulation of findings and conclusions, the trial court stated that it "was aware of the issues during the trial, and made findings that resolved issues of credibility, and all other conflicts of the evidence." The court further declared that defendant's rights to testify and present a defense were not violated. In January 2023, defendant was sentenced as noted above. This appeal followed.

## II. ANALYSIS

### A. REBUTTAL TESTIMONY

Defendant first argues that the trial court violated his due-process rights by precluding rebuttal testimony. We disagree.

Whether a party has been afforded due process is a question that we review de novo on appeal. *People v Wilder*, 485 Mich 35, 40; 780 NW2d 265 (2010). "[T]o establish a due process

violation, a defendant must prove prejudice to his defense." *People v McGee*, 258 Mich App 683, 700; 672 NW2d 191 (2003).

This Court will not disturb a trial court's evidentiary decision absent an abuse of discretion. See *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). Decisions regarding the admission of evidence frequently involve preliminary questions of law, which we review de novo. See *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013); *Gursky*, 486 Mich at 606. To the extent that defendant argues that he is entitled to a new trial based on the court's evidentiary ruling here, we review the trial court's denial of a motion for a new trial for an abuse of discretion. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008); *People v Brown*, 279 Mich App 116, 144; 755 NW2d 664 (2008).

The right to present a defense includes the right to cross-examine witnesses, offer testimony, and be represented by counsel. *McGee*, 258 Mich App at 699. However, the right to present a defense "is not absolute: the accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Zitka*, 335 Mich App 324, 333; 966 NW2d 786 (2020) (quotation marks and citation omitted).

The evidence at issue is defendant's testimony regarding his responses during his interrogation with Officer McDonald. The trial court stopped a line of questioning about what defendant said to Officer McDonald about the gun, noting that defendant had already "stated right here, under oath, he didn't know it was there, and had nothing to do with it." This issue therefore concerns whether the trial court had proper reason to prevent defendant from testifying about telling Officer McDonald he had not seen the gun after he already testified that he had not seen the gun.

Generally, relevant evidence is admissible. MRE 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." MRE 401. In this case, the evidence defendant sought to offer was that he told Officer McDonald he had not seen the gun, a fact that was unclear from the interrogation record. Thus, the evidence was relevant. However, even if relevant and otherwise admissible, a trial court may exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. MRE 403. See also *Feezel*, 486 Mich at 198. When the trial court stopped defense counsel from asking defendant about his interrogation testimony, it stated:

> Well, what difference does it make? . . . He said he didn't do it. . . . [I]t's a statement that, the People put in, but he didn't say anything, or admitted, that he knew anything about a gun. He said the same thing, now. So, why go over it twice[?]

Because defendant wanted to testify that he told Officer McDonald he had not seen the gun after testifying he had not seen the gun, the excluded evidence would plainly have been cumulative.

Defendant nevertheless argues that he was entitled to introduce this testimony to complete the information provided in the interrogation record. However, under MRE 106, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." This rule does not allow for the introduction of *testimony* offered to supplement a recorded statement, nor does it suggest that the evidence it authorizes may never be excluded as cumulative. MRE 106 is therefore inapplicable.

Defendant also characterizes the testimony he wished to offer as rebuttal evidence, and argues that the court should have allowed it as such. Rebuttal evidence is evidence that explains, contradicts, or otherwise refutes an opponent's evidence. *People v McGhee*, 268 Mich App 600, 638; 709 NW2d 595 (2005). If evidence is responsive to evidence introduced, or a theory developed, by the opponent, it is proper rebuttal even if it overlaps evidence admitted in the case-in-chief. *Id*. Here, the trial court expressed the view that the offered testimony was cumulative, and indicated an understanding that the interrogation record was not definitive regarding whether defendant saw the gun in the car. Because the trial court was the fact-finder, and acknowledged that the interrogation record would justify this testimony were it not cumulative, the trial court's exclusion of the testimony as cumulative was not outside the range of principled outcomes.

Likewise, the trial court's denial of defendant's motion for a new trial was not an abuse of discretion, insofar as it was predicated on that evidentiary decision. MCR 2.611(A)(1) states:

A new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:

(a) Irregularity in the proceedings of the court, jury, or prevailing party, or an order of the court or abuse of discretion which denied the moving party a fair trial.

(b) Misconduct of the jury or of the prevailing party.

(c) Excessive or inadequate damages appearing to have been influenced by passion or prejudice.

(d) A verdict clearly or grossly inadequate or excessive.

(e) A verdict or decision against the great weight of the evidence or contrary to law.

(f) Material evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at trial.

(g) Error of law occurring in the proceedings, or mistake of fact by the court.

(h) A ground listed in MCR 2.612 [pertaining to relief from judgment] warranting a new trial.

MCR 6.431, specifically regarding new trials in criminal cases, includes the following:

> (B) On the defendant's motion, the court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice. The court must state its reasons for granting or denying a new trial orally on the record or in a written ruling made a part of the record.

> (C) If the court tried the case without a jury, it may, on granting a new trial and with the defendant's consent, vacate any judgment it has entered, take additional testimony, amend its findings of fact and conclusions of law, and order the entry of a new judgment.

As discussed, the trial court's decision to exclude certain cumulative testimony was not an irregularity, let alone one that denied defendant a fair trial. While the right to present a defense, including to testify on one's own behalf, exists within the framework of the Michigan Rules of Evidence, the trial court's decision to exclude the cumulative testimony did not result in a miscarriage of justice supporting appellate reversal under MCR 6.431(B). See *Zitka*, 335 Mich App at 333. The challenged evidentiary decision was therefore insufficient ground for a new trial.

## B. NEWLY DISCOVERED EVIDENCE

Defendant next argues that he is entitled to a new trial because he has newly discovered evidence that would rebut Alford's denial that the gun was his. We disagree.

A trial court's decision whether to grant a new trial is reviewed for an abuse of discretion. *Miller*, 482 Mich at 544. The trial court's factual findings are reviewed for clear error. MCR 2.613(C); *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003); *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). Clear error occurs if "the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

The evidence defendant offers as "newly discovered" is his trial attorney's testimony that Alford admitted that the gun was his, and that he shoved it under the passenger seat, near defendant's feet, causing police to believe the gun belonged to defendant. Defendant offers this testimony on information and belief only, providing no supporting affidavit from his trial attorney. MCR 2.611(D)(1) states that "[i]f the facts stated in the motion for a new trial or to amend the judgment do not appear on the record of the action, the motion must be *supported by affidavit*, which must be filed and served with the motion." (Emphasis added.) The failure to produce such an affidavit itself supported the decision to deny the motion for a new trial. However, the trial court did not deny the motion on that basis, and instead concluded that the proposed evidence did not meet the requirements for granting a new trial.

To justify a new trial on the basis of any newly discovered evidence, the moving party must show that (1) the evidence itself, and not merely its materiality, is newly discovered; (2) the evidence is not cumulative; (3) including the new evidence on retrial would probably cause a different result; and (4) the party could not with reasonable diligence have discovered and

produced the evidence at trial. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012); *Cress*, 468 Mich at 692. Evidence is not newly discovered if the defendant or defense counsel was aware of it at the time of trial. *Rao*, 491 Mich at 281. A defendant who is aware of evidence before trial has the burden of using reasonable diligence to investigate and produce it. *Id.* at 283-284. The rule requiring reasonable diligence is not punitive, but rather "require[s] of parties care, diligence, and vigilance in securing and presenting evidence." *Id.* at 284 (quotation marks and citation omitted).

Relevant to this issue, we note that attorneys are generally prohibited from acting as an advocate and a witness in the same trial. *People v Holtzman*, 234 Mich App 166, 186; 593 NW2d 617 (1999). Defendant acknowledges this, but argues that he could not, with reasonable diligence, have offered testimony from defense counsel at trial when the impeachment value of such testimony arose. However, when relevancy of evidence is discovered during trial, reasonable diligence to produce it would include requesting a continuance or postponement. *Id.* at 283-284. For these reasons, defendant's protestations of due diligence are unavailing. Ultimately, failing to meet one element required to justify a new trial is all it takes to properly deny a motion for a new trial. Here, because defendant cannot establish that he satisfied the requirement of reasonable diligence to produce the proposed new evidence, whether the evidence would make a different result probable is inconsequential. The trial court's denial of the motion for lack of due diligence was within the range of principled outcomes.

## C. SUFFICIENCY OF THE EVIDENCE

Finally, defendant argues that sufficient evidence was not presented to convict him. We disagree.

Following a bench trial, we review a challenge to the sufficiency of the evidence de novo. *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). On appeal, we "defer to the fact-finder by drawing all reasonable inferences and resolving credibility conflicts in support of the . . . verdict." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007).

Defendant argues on appeal that the trial court inadequately discussed the findings of fact and conclusions of law that led to his conviction. In actions tried without a jury, the trial court must find the facts and state separately its conclusions of law. MCR 6.403; *People v Kanaan*, 278 Mich App 594, 619 n 10; 751 NW2d 57 (2008). However, the trial court is not required to make specific findings of fact regarding each element of the crime charged. *People v Legg*, 197 Mich App 131, 134; 494 NW2d 797 (1992). The recitation of findings and conclusions will be deemed sufficient so long as the court covers the pertinent information "without overelaboration of detail or particularization of facts." MCR 2.517(A)(2). Further, a court's findings are sufficient if it appears that the court was aware of the issues in the case and correctly applied the law. *Lanzo Constr Co*, 272 Mich App at 479. The sufficiency of findings must be reviewed in the context of the specific legal and factual issues raised by the parties and the evidence. *Id.* The trial court may state its findings and conclusions on the record or it may include them in a written opinion. MCR 6.403; *Kanaan*, 278 Mich App at 619 n 10.

The elements of possession of a firearm by a felon are that (1) the defendant is a felon, (2) who possessed or carried a firearm, (3) before his or her right to do so was formally restored.

*People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016); MCL 750.224f. The elements of a felony-firearm are that the (1) defendant carried or possessed a firearm, (2) during the commission, or attempted commission, of a felony. *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999); MCL 750.227b.

The trial court presented several of its findings of fact in an exchange with defendant's attorney. The court took notice of the likely credibility conflicts given that three occupants of the car testified they did not know about the gun in the vehicle until the police told them it was there. Defendant's attorney reminded the trial court that Alford's testimony indicated that he knew what kind of gun it was, even though he denied having seen it. The trial court then directly explained how it resolved these credibility questions, stating that Alford knew about the gun because the three men "were all up there blasting away because it was New Year's Eve" before they were arrested. The court went on to note that defendant "was in the backseat, with his foot, trying to hide the gun . . . ." In other words, the combination of the report to the police of shots fired from a vehicle in the area and Officer McDonald's testimony that he found the gun under defendant's foot made each occupant's denial of awareness of the gun implausible. The trial court clearly expressed that it did not find any of the occupants credible and that it believed all three men knew about the gun. The court found Officer McDonald's testimony that he found the gun under defendant's foot credible evidence that defendant was in possession of the gun and was trying to hide it.

Having reviewed the record, we conclude that the trial court made the appropriate factual findings and legal conclusions in support of its ruling, and met the requirement to place a definite and pertinent statement on the record in accordance with court rule. See MCR 2.517(A)(2). The court demonstrated its awareness of the credibility issues and the implications of those issues on the resolution of the element of possession, which was what was required of it under MCR 6.403. Defendant's claim thus fails.

Affirmed.

/s/ Kathleen Jansen
/s/ Michelle M. Rick
/s/ Sima G. Patel