# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DAVID TROY ZARN,

      Defendant-Appellant.

UNPUBLISHED
March 22, 2016

No. 323279
Wayne Circuit Court
LC No. 13-008592-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DAVID TROY ZARN,

      Defendant-Appellant.

No. 323280
Wayne Circuit Court
LC No. 13-008758-FC

---

Before: K. F. KELLY, P.J., and FORT HOOD and BORRELLO, JJ.

PER CURIAM.

In docket number 323279, defendant appeals as of right his jury trial convictions of three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (person under 13 years of age), and second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a) (person under 13 years of age). Defendant was sentenced to 30 to 70 years' imprisonment for the CSC I convictions to be served consecutive to 15 to 25 years' imprisonment for the CSC II conviction. In docket number 323280, defendant appeals as of right his jury trial conviction of CSC I, MCL 750.520b(1)(a) (person under 13 years of age). Defendant was sentenced to 30 to 70 years' imprisonment for the CSC I conviction. These cases were consolidated for the efficient administration of the appellate process.[1] We affirm defendant's convictions, but remand for a

---

[1] *People v Zarn*, unpublished order of the Court of Appeals, issued September 17, 2014.

-1-

*Crosby*[2] hearing in accordance with *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015).

This case arises from allegations of prolonged sexual abuse by defendant against his stepdaughters, T.S. and L.S. Defendant married the complainants' mother, Jennifer Zarn, in 2000, shortly after Jennifer divorced the complainants' biological father, Richard Shene. The complainants lived in Michigan with defendant and Jennifer until 2006, at which point Jennifer, defendant, and the complainants moved to Pennsylvania. Complainants testified at trial that defendant sexually abused them while they lived in both Michigan and Pennsylvania. Both complainants testified that the abuse in Michigan included defendant forcing complainants to perform oral sex on him. In 2012, T.S. told her boyfriend about the abuse, which ultimately led to an investigation, during which both complainants disclosed abuse. The case proceeded to trial, and defendant was convicted of all charged crimes, which he now appeals.

Defendant first argues that he is entitled to resentencing because the trial court engaged in impermissible judicial fact-finding to score the sentencing guidelines, that the trial court failed to correctly score several OVs, that the court violated the Ex Post Facto Clause by applying MCL 750.520b, and that the trial court lacked substantial and compelling reasons for upward departure from the sentencing guidelines. We remand for a *Crosby* hearing, but reject defendant's additional arguments challenging his sentences.

Generally, "[f]or an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Here, defendant failed to preserve several errors claimed on appeal. Defendant did not object to the scoring of the guidelines at sentencing on the basis of *Alleyne v United States*, 570 US___; 133 S Ct 2151, 2163; 186 L Ed 2d 314 (2013). Defendant did not assert that the trial court violated the Ex Post Facto Clause when it considered MCL 769.34(2). Finally, defendant did not object to the alleged judicial misconduct at sentencing. *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). Accordingly, these issues are unpreserved. Defendant's claims relating to the scoring of OVs and the court's upward departure were preserved for appeal.

Appellate review of unpreserved errors is limited to plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness. *Lockridge*, 498 Mich at 392. When reviewing a scoring issue, the trial court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The court's application of the facts to the statutory scoring conditions is a question of statutory interpretation that is reviewed de novo on appeal. *Id.*

We initially address defendant's unpreserved *Lockridge* argument. In *Alleyne*, 133 S Ct at 2163, the United States Supreme Court held that because "mandatory minimum sentences

---

[2] *United States v Crosby, 397 F3d 103, 117-118 (CA 2, 2005).*

increase the penalty for a crime," any fact that increases the mandatory minimum is an "element" that must "be submitted to the jury and found beyond a reasonable doubt." In *Lockridge*, 498 Mich at 364, our Supreme Court held that Michigan's sentencing guidelines were constitutionally deficient under *Alleyne* to the extent that "the guidelines *require* judicial fact-findings beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e. the 'mandatory minimum' sentence under *Alleyne*." To remedy the constitutional violation, the Court severed MCL 769.34(2) to the extent that it makes the sentencing guidelines, as scored based on facts beyond those admitted by the defendant or found by the jury, mandatory. *Id*. The Court explained that a sentencing court must still score the guidelines to determine the applicable guidelines range, but a guidelines range calculated in violation of *Alleyne* is now advisory only. *Id*. at 365.

Here, the jury did not make the necessary findings to support the scoring of OV 3 (physical injury), OV 4 (psychological injury), OV 10 (predatory behavior), and OV 13 (continuing pattern of criminal behavior). Further, defendant made no admissions sufficient to establish these variables. Therefore, the "facts admitted by defendant or found by the jury verdict were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he [] was sentenced[,]" resulting in a violation of defendant's Sixth Amendment rights. *Id*. at 395. However, the *Lockridge* Court explained that defendants who received an upward departure sentence could not establish plain error because the trial court did not rely on the minimum sentence range. *Id*. at 394; see also *People v Steanhouse*, ___ Mich App ___, ____; ___ NW2d ___ (2015); slip op at 21 (Docket No. 318329). Rather, "a sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Lockridge*, 498 Mich at 392.

In *Steanhouse*, this Court determined the appropriate procedure for considering the reasonableness of a departure sentence. The Court ultimately adopted the principle of proportionality standard articulated in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). Under this standard, "a given sentence [could] be said to constitute an abuse of discretion if that sentence violate[d] the principle of proportionality, which require[d] sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 636. "As such, trial courts were required to impose a sentence that took 'into account the nature of the offense and the background of the offender.' " *Steanhouse*, ___ Mich App at ___; slip op at 23, citing *Milbourn*, 435 Mich at 651.

> Factors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense; (2) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation; and (3) factors that were inadequately considered by the guidelines in a particular case. [*Steanhouse*, ___ Mich App at ___; slip op at 24 (citations omitted).]

Pursuant to *Steanhouse*, because the law and analysis for upward departure sentences has changed since defendant's sentencing, remand for a *Crosby* hearing is proper because "the trial

court was unaware of and not expressly bound by a reasonableness standard rooted here in the *Milbourn* principle of proportionality." *Id*. at ___; slip op at 25.

Accordingly, we remand the matter to the trial court to follow the *Crosby* procedure outlined in *Lockridge*. *Id.* at ___; slip op 25. We note that "defendant may elect to forego resentencing by providing the trial court with prompt notice of his intention to do so" due to the possibility that defendant may receive a more severe sentence on remand. *People v Stokes*, ___ Mich App ___, ___; ___ NW2d ___ (2015); slip op at 11-12 (Docket No. 321303). If notification is not received, the trial court must consider whether the court would have imposed a materially different sentence but for the constitutional error. *Lockridge*, 498 Mich at 397. "If the trial court determines that the answer to that question is yes, the court shall order resentencing." *Id*.

Despite our determination that remand is appropriate, analysis of the remaining issues is necessary as they may arise in the case of resentencing. We next address defendant's challenges to the trial court's scoring of OVs 3, 10, and 13.

OV 3 addresses physical injury to a victim, and was scored at five points during sentencing. MCL 777.33(1). OV 3 should be scored at five points when "[b]odily injury not requiring medical treatment occurred to a victim." MCL 777.33(1)(e). Defendant asserts that forcing a young child to perform oral sex does not constitute bodily injury. However, the trial court relied on L.S.'s testimony that she gagged and threw up when forced to perform oral sex to support the five point score. We agree with the trial court that gagging L.S. to the point that she was physically ill constituted physical injury not requiring medical treatment. No error occurred.

OV 10 scores exploitation of a vulnerable victim, and should be scored at 15 points when predatory conduct was involved. MCL 777.40(1)(a). "Predatory conduct" means preoffense conduct directed at a victim for the primary purpose of victimization. Defendant contends that OV 10 was improperly scored at 15 points, and should have only been scored at 10 points for exploitation of the victim's youth. Here, the complainants testified that, soon after defendant married Jennifer and began living with the complainants, he established himself as a father figure to the complainants, who were very young. He then began to engage in grooming behavior. Both complainants testified that he performed examinations of their bodies and utilized physical discipline. He would instruct them not to flinch or move when being touched. T.S. testified that after he performed sexual acts, he would hug her and tell her he loved her. Defendant's ongoing conduct of sexual abuse was primed by his simultaneous loving and violent behavior toward complainants, which ultimately proved very predatory in nature.

The trial court scored OV 13 at 50 points. OV 13 should be scored 50 points when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age." MCL 777.43(1)(a). The instructions provide that "all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). However, conduct used to score this variable should not be scored in OV 11 or OV 12. MCL 777.43(2)(c). The trial court scored 50 points for OV 11. A 50-point score is appropriate where "[t]wo or more criminal sexual penetrations occurred." MCL 777.41(1)(a). Defendant does not dispute that there was error in scoring OV 11, but argues that the trial court scored the same

-4-

conduct (the additional two sexual penetrations against T.S. for which defendant was convicted) under OV 13. However, the trial court stated on the record that in scoring OV 13, it relied on the complainants' testimony that defendant's conduct was ongoing for several years, encompassing many sexual penetrations not accounted for in OV 11. Accordingly, the trial court did not err because it relied on separate penetrations when scoring OV 13.

Defendant next asserts that the trial court violated the Ex Post Facto Clause of the Michigan and federal constitutions. We disagree. The Ex Post Facto Clauses of the United States and Michigan Constitutions bar the retroactive application of a law if the law: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a crime; or (4) allows the prosecution to convict on less evidence. *People v Earl*, 495 Mich 33, 37; 845 NW2d 721 (2014). MCL 769.34(2) provides that "the minimum sentence imposed by a court of this state . . . shall be within the appropriate sentence range under the version of those sentencing guidelines in effect on the date the crime was committed." Here, defendant complains of the trial court's reference to MCL 750.520b(2)(b), enacted in 2006 after the crimes were committed, which provides a 25-year minimum sentence for CSC I when the victim is under 13 years old. Contrary to defendant's assertion, the trial court did not apply MCL 750.520b. The prosecutor and trial court merely referenced the change in the law when discussing the trial court's discretion to depart upward from the sentencing guidelines. The trial court stated that the amendment of the statute further illustrated the inadequacy of the sentencing guidelines as applied to this case. The trial court did not follow the law or apply it. Moreover, the trial court still provided reasons for upward departure separate from its reference to MCL 750.520b. Thus, no error occurred.

The prosecutor concedes that the trial court erroneously imposed consecutive sentences pursuant to MCL 750.520b(3).[3] MCL 750.520b was amended in 2006 to allow for consecutive sentences in CSC cases such as this one. However, defendant's crimes were committed before the statute was amended. Thus, we agree with the prosecutor that, on remand, the trial court should amend defendant's judgment of sentence to reflect concurrent sentences.

Finally, defendant claims that he was denied a fair sentencing because of judicial misconduct. Specifically, defendant claims that the trial court exhibited bias when it refused to allow Jennifer to address the court at sentencing. First, we note that the trial court did not stop Jennifer from addressing the court. While the judge initially refused to allow Jennifer to speak, she then stated: "You know what? Let her. Go ahead." Defense counsel then declined multiple times. Because defense counsel effectively withdrew his request, this issue was waived. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). Further, we are not convinced that defendant was entitled to have Jennifer speak at the sentencing hearing. MCR 6.425(E)(1)(c) provides that only defendant, defendant's lawyer, the prosecutor, and the victim must have "an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence." Defendant relies on MCR 6.425(E)(1)(b), which provides that the trial court must "give each party an opportunity to explain, or challenge the accuracy or

---

[3] Defendant did not raise this argument on appeal.

relevancy of, any information in the presentence report, and resolve any challenges." However, our review of the record reveals that defendant was afforded this opportunity to address the presentence investigation report (PSIR) and raised no challenges. Furthermore, defendant provided an explanation of the information Jennifer wished to share with the court, all which was duplicative of testimony already in the record. Indeed, Jennifer testified at trial as to many of the things she wished to state, and her statement was also contained in the PSIR. While the trial court did express an incredulous tone and demeanor when defense counsel requested that Jennifer speak, comments that are critical of or hostile to counsel and the parties are generally not sufficient to establish judicial bias. *People v Jackson*, 292 Mich App 583, 598; 808 Mich 541 (2011). For these reasons, defendant was not denied a full and fair sentencing on this basis.

Defendant next argues that he was denied the effective assistance of counsel. We disagree. Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id*., citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). While defendant preserved this issue, the trial court did not hold an evidentiary hearing, so this Court's review is limited to the facts on the record. *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009), citing *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

"To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013), citing *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207.

Defendant raises several instances of alleged ineffective assistance of counsel. Defendant first asserts that defense counsel was ineffective for failing to request a limiting instruction regarding the introduction of other acts evidence. Specifically, the jury should have been instructed not to use the other acts evidence—the testimony of the events that occurred in Pennsylvania—to conclude defendant was a bad person and, thus, committed the crimes. Before trial, the prosecution brought a motion to admit evidence that defendant sexually abused the complainants in Pennsylvania pursuant to MRE 404(b) and MCL 768.27a. As discussed *infra*, this evidence was properly admitted pursuant to MRE 404(b) and MCL 768.27a. Defendant's argument here lacks merit because evidence admitted pursuant to MCL 768.27a is admissible "to show a defendant's character and propensity to commit the charged crime[.]" *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012). Furthermore, while defendant claimed that no distinction was made between the Michigan acts and Pennsylvania acts during trial, the trial court explained in a jury instruction that evidence of sexual misconduct for which defendant was not on trial had been admitted, and that the jury must not convict defendant solely on the basis that the jury thought defendant was guilty of other bad conduct. While defendant contends the trial court did not read the correct instruction, defense counsel expressly approved the instruction given, thus waiving the issue. *Kowalski*, 489 Mich at 503. Moreover, instructional error is only grounds for reversal when it resulted in a miscarriage of justice. Given the trial court's

instruction on MRE 404(b) as opposed to MCL 768.27a, no miscarriage of justice resulted from the instructions. In addition, the prosecutor's opening statement did not refer to the other acts evidence improperly. The evidence was already deemed admissible, and the prosecutor explained that the evidence of the Pennsylvania acts would provide context and corroboration for the complainants' allegations. We do not agree that the prosecutor's comments suggested that the jury consider the evidence for an improper purpose. Accordingly, defendant was not denied effective assistance on this ground.

Second, defendant claims that defense counsel was ineffective for failing to object to the admission of evidence. Defendant asserts that the prosecution elicited bad acts evidence not properly noticed before trial. According to defendant, the testimony that Jennifer was investigated regarding T.S. breaking her leg as a baby, admitted during the prosecutor's redirect examination of Richard, was improper. We disagree. First, on cross-examination defense counsel questioned Richard regarding signs of physical abuse by Jennifer, and the prosecution's questions were responsive to that inquiry. A "prosecutor may fairly respond to an issue raised by the defendant." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). Further, the testimony was brief, and the trial court clarified that any investigation resulted in no charges being brought. Accordingly, even if the admission was error, there was no reasonable probability that the outcome of defendant's trial would have been different had counsel objected. *Nix*, 301 Mich App at 207. Further, there was no record support for defendant's claim that the prosecutor used Jennifer to show defendant's guilt by association or engaged in a civic duty argument to divert the jury's attention from defendant's guilt. While evidence regarding Jennifer was admitted, the defense contributed to such evidence and much of the prosecution's evidence and arguments relating to Jennifer were responsive in nature. Furthermore, based on our review of the entire record, the prosecution's primary focus was properly on defendant and his behavior, not Jennifer.

Defendant also asserts that defense counsel should have objected to the suggestion that defendant had child pornography on the hard drive of his computer. We disagree. Charles Balogh, investigator for the Luzerne County District Attorney's office in Pennsylvania, testified that, frequently, there is a correlation between child pornography and child sex abusers. We agree with the trial court that the fact that Balogh did not find child pornography on defendant's computer was beneficial to defendant's case, and cut against Balogh's credibility. Furthermore, while defendant claims that Balogh suggested that defendant had child pornography on his computer but "wiped" the hard drive, we disagree. While that inference could have been drawn from the evidence presented, Balogh did not testify as to that. For the same reason, we reject defendant's assertion that defense counsel should have objected to Balogh's testimony that suggested defendant stole security cameras from his job. Balogh only testified that the cameras in defendant's home were the same as those used in the casino where defendant worked. He did not testify or suggest that defendant stole the cameras, and this evidence was later rebutted by defendant's testimony that the cameras in the home were not the same as those in the casino. Further, we agree with the trial court that the testimony regarding defendant's possession of security cameras actually bolstered his claim about why he had such large storage capacity on his personal computer. We disagree that defense counsel should have objected to Balogh's "opinion" testimony regarding the Christmas Eve photograph of L.S. This testimony was merely Balogh's perception of the photograph, admissible pursuant to MRE 701, and showed why this particular photograph captured his attention during the investigation. Moreover, the photograph

was admitted for the jury to view and evaluate. There was no record support for defendant's assertion that the prosecutor admitted the photograph improperly to suggest it was child pornography. Rather, it appears the prosecution admitted the photograph to demonstrate the relationship as it existed between defendant and the complainants.

Defendant contends that defense counsel should have objected to photographs admitted that showed complainants at different ages, claiming that the photographs were intended to garner sympathy from the jury. We disagree. The photographs were relevant to illustrate to the jury the children's ages at the time of the offenses, which spanned multiple years. Furthermore, defendant also presented photographs of the complainants, which cuts against his claim.

Defendant next contends that defense counsel should have objected to Allison Cave's, Child Protective Services (CPS) intake supervisor for Luzerne County, Pennsylvania, opinion testimony regarding the results of the CPS investigation because it was inadmissible hearsay. Defendant contends that the testimony improperly bolstered the complainants' credibility, relying on *People v Douglas*, 496 Mich 557; 852 NW2d 587 (2014). However, Cave did not comment on the complainants' credibility, such as in *Douglas*. Cave clearly testified that her testimony was based solely on the conclusion of CPS, and not on her opinion on the veracity of the complainants' allegations. Further, the testimony was admitted to show the next steps of the investigation, not to prove the truth of the matter asserted, so it was not hearsay. MRE 801. For the same reason, we reject defendant's claim that defense counsel should have objected to Harry Zearfoss's, guidance counselor at T.S.'s school, testimony that T.S. told him she was being molested and Balogh's testimony that the district court found there was probable cause to issue search warrants. This testimony was admitted to show what came next in the investigation, not to prove the truth of whether defendant committed the crimes.

Defendant next claims that counsel should have objected to several arguments made by the prosecution, including the prosecutor's statement that he was surprised defendant moved into the home Richard and Jennifer had lived in together. As defense counsel states, it is difficult to see how this statement was prejudicial. While he claims that "the prosecution [] wanted the jury to draw a negative conclusion," he cannot articulate how the statement negatively impacted defendant. Accordingly, there was no reasonable probability that defense counsel's failure to object to this brief, isolated statement made a difference in the outcome of trial. *Nix*, 301 Mich App at 207. Defendant also contends that during rebuttal argument, the prosecutor improperly suggested that it was inappropriate for a 16-year-old girl to sit in an adult's lap. This argument was responsive to defendant's claims that the complainants should have told Jennifer of the abuse, and was used to argue that Jennifer ignored the signs of abuse and that it was clear that she would have been loyal to defendant if complainants told her of the abuse. This was a permissible argument responding to defendant's claims. *Brown*, 279 Mich App at 135. The record does not support defendant's assertion that the prosecutor suggested to the jury that the complainants would have to move back to Pennsylvania if they did not convict defendant. The prosecutor sated "let's remember this is the person you're saying the complainants are supposed to go to." When read in context, it is clear the prosecutor is referring to whether the complainants could have gone to Jennifer to disclose the abuse, not suggesting that the complainants would be returned to her custody.

Finally, defendant raises claims relating to defense counsel's errors in his attempts to present an expert witness, Dr. Katherine Okla, at trial. In denying defendant's motion for a new trial on these grounds, the trial court held that, even assuming defense counsel had made more strenuous efforts to obtain the expert witness, it would not have impacted the court's holding. The court concluded that the case was solely based on the credibility of the witnesses, and that expert testimony would not aid the trier of fact given the age of the complainants. Defense counsel is not ineffective for failing to raise a meritless argument or futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Accordingly, defense counsel was not ineffective on these grounds.

Defendant also claims defense counsel failed to properly investigate his proposed defense—that because the complainants excelled in school, they could not have been abused. According to defendant, had he consulted Dr. Okla, she would have informed him that good grades and sexual abuse were not inconsistent, so defense counsel would not have been "blindsided" by Cave's and Zearfoss's testimony to the contrary. We are not convinced by defendant's argument. In the trial court, defendant requested that Dr. Okla be allowed to testify regarding characteristics of children who have been sexually abused, which refutes defendant's claim of defense counsel's failure to consult Dr. Okla on these matters. In addition, even if there was no correlation between good grades and children who were sexually abused, admission of evidence that the complainants were doing well in school and were well adjusted still corroborated defendant's claim that they were lying. This strategy was not objectively unreasonable, particularly considering the fact that Cave and Zearfoss were not expert witnesses, and testified only briefly of their opinions based on their experience. Further, defense counsel's theory was a matter of trial strategy, which this Court does not second guess. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

Defendant next argues that the trial court abused its discretion in the admission of evidence. We disagree. This Court reviews for an abuse of discretion a preserved challenge to the admission of evidence. *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id*.

Defendant claims the trial court made several evidentiary errors. First, defendant contends that the trial court erred in denying defendant's request for expert witness testimony. Defendant requested to admit the testimony of Dr. Okla, who would testify that the complainants were subject to suggestive interview techniques, including repeated interviews. The trial court denied the request. Defendant asserts that the trial court's denial constituted a predetermination that the complainants were credible.

MRE 702 permits expert witness testimony when it "will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" Here, the trial court held that an expert witness was not necessary to assist the jury in understanding the issues. The only issue in the case was credibility and the trial court held that the complainants were beyond the age where they would fall victim to suggestive interviews. Ultimately, we conclude that the trial court did not abuse its discretion based on the circumstances. Here, the allegedly suggestive interviews were never admitted. Rather, the jury was directly presented with the complainants' testimony, which they had to decide was true or not. Contrary to defendant's claims, the trial court did not

predetermine that the complainants were telling the truth—the court left the issue for the jury. While defendant asserts that the complainants were underage, and, thus, still children, we are inclined to agree with the trial court regarding the age and susceptibility of the complainants. At the time of trial, T.S. was 16 years old and L.S. was 14 years old. In the case relied on by defendant to support his position, *People v Trakhtenberg*, 493 Mich 38; 826 NW2d 136 (2012), the child victim was only eight years old. The complainants here were of an age where they would understand the difference between a truth and a lie, and continued to clearly contend that defendant sexually abused them at the time of trial. This was a straightforward case based solely on the credibility of the witnesses.

> Because it is the province of the jury to determine whether a particular witness spoke the truth or fabricated a cock-and-bull story, it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial. Such comments have no probative value, because they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence . . .. As a result, such statements are considered superfluous and are inadmissible lay witness opinion on the believability of a witness's story because the jury is in just as good a position to evaluate the witness's testimony. [*People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013).]

Further, it has been held that an expert witness may not opine that a complainant has not been coached or was being truthful, as it improperly comments on the credibility of the witness. *Douglas*, 496 Mich at 583. Here, the true purpose of the expert testimony would have been to attack the credibility of the complainants, and would have only served to distract the jury from its ultimate responsibility of determining their credibility. Accordingly, the trial court did not abuse its discretion.

Second, defendant asserts that the trial court erred in allowing evidence that Jennifer was a bad mother. Specifically, defendant points to Cave's testimony that Jennifer did not believe the complainants' allegations and that the complainants were removed from the home. Defendant claims that this evidence was not relevant pursuant to MRE 401. However, defendant consistently argued that the complainants were not credible because they never disclosed the abuse to Jennifer. The fact that Jennifer did, in fact, not believe complainants was certainly relevant in response. Further, the evidence was relevant to show the next steps in the investigation. Additionally, Jennifer later testified regarding the same facts, rendering admission harmless. MCL 769.26.

Third, defendant contends that the trial court erred in admitting the bad acts evidence of defendant's alleged misconduct in Pennsylvania. Specifically, defendant asserts that the trial court applied the wrong analysis when considering the admissibility of the evidence pursuant to MCL 768.27a. MCL 768.27a(1) provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Here, the evidence at issue, testimony by the complainants that defendant had molested them multiple times in Pennsylvania, plainly falls within the scope of MCL 768.27a. However, evidence admissible pursuant to MCL 768.27a may still be excluded

under MRE 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Watkins*, 491 Mich at 481, 486.

> [W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect. That is, other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference. [*Id*. at 487.]

The *Watkins* Court further held that "[t]here are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony." *Id*. at 487-488.

Defendant contends that had the trial court applied the proper analysis, it would have denied the admission of the other acts evidence. Specifically, defendant asserts that the evidence of the Pennsylvania acts took up far more time at trial than did any of the events that took place in Michigan. However, we do not agree that the fact that testimony from the events in Pennsylvania was more extensive than the testimony regarding the Michigan events rendered the evidence overly prejudicial. Not only were the complainants younger when they lived in Michigan, but they also lived in Pennsylvania longer. Additionally, much of the evidence regarding events in Pennsylvania related to the disclosure of the abuse and subsequent investigation, as opposed to testimony regarding the substance of the abuse itself. Accordingly, the trial court did not abuse its discretion in admitting the other acts evidence at trial.

Fourth, defendant asserts that he was denied the right to elicit evidence in support of his defense. Specifically, defendant complains that he was not allowed to question his mother, Marge Zarn, regarding whether T.S. had ever confided information concerning sexual assaults or whether T.S. lingered in the shower. First, we note that Marge did testify that the complainants never confided in her regarding any abuse, contrary to defendant's claim. Additionally, when the trial court denied his request to further question the witness, defense counsel had already been allowed a direct examination and a redirect examination. The proceeding had already gone over the estimated time for trial, and the judge had expressed that the questioning of minor witnesses was taking too much time. Pursuant to MRE 611(a), "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . avoid needless consumption of time." Here, the trial court did not abuse its discretion because the fact that complainants never confided in Marge regarding the abuse was already in the record, and whether Marge knew if T.S. lingered in the shower was a minor, immaterial detail.

Fifth, defendant claims that the trial court abused its discretion in determining that no *Brady* violation occurred. During Richard's direct examination, he testified that L.S. had stated that she wanted to commit suicide. Defendant objected and moved for a mistrial, arguing that he should have been informed of this information before trial, especially because it directly rebutted

his theory of the case. The prosecutor stated that he had learned that information three to four days before trial during an interview with Richard, and was under no obligation to turn the information over to the defense because it was work product. The trial court denied defendant's request for a mistrial.

Defendant correctly states that a criminal defendant has a due process right to obtain exculpatory evidence possessed by the prosecution if it would raise a reasonable doubt about the defendant's guilt. *Brady v Maryland*, 373 US 83, 27; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To establish a *Brady* violation, a defendant must prove that: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. To establish materiality, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*.

The trial court did not err in ruling that the prosecutor did not violate *Brady*. First, we note that information obtained from an interview is not subject to mandatory disclosure by the prosecutor. See *People v Holtzman*, 234 Mich App 166, 168-169; 593 NW2d 617 (1999). Furthermore, the evidence at issue was not exculpatory or impeaching. Defendant contends that the evidence was exculpatory because it was further evidence of L.S.'s attention seeking personality. However, no evidence was admitted that L.S. exhibited attention seeking behavior, or that was the reason she was making the allegations. Rather, it was asserted that she was bringing the allegations because she wanted to support T.S. Further, the evidence that was admitted showed the effects of the disclosure on L.S., not whether her claims were true or false. For the same reasons, the evidence was not material, as there was not a reasonable probability that if the information was disclosed the result of the proceeding would have been different. Defense counsel's theory that because the girls were doing well in school during the time they claimed to be abused was still viable even considering the new information, as the suicidal thoughts did not begin until after the complainants disclosed the abuse. Accordingly, defendant's claim fails.

Finally, even assuming the trial court erred in relation to any of defendant's claims, he has failed to establish that any of these errors merit reversal. Pursuant to MCL 769.26:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

Throughout his brief, defendant attempts to ignore the clear and direct testimony of both complainants regarding defendant's sexual misconduct. While there were ancillary issues that may have minorly impacted credibility, the paramount issue in the case was whether the jury believed the allegations as testified to by complainants. We are not convinced that the issues raised by defendant impacted the case significantly given the complainants' testimony. Finally,

-12-

defendant makes cursory arguments that any admission of hearsay evidence violated his rights under the confrontation clause. Because there were no errors in the admission of evidence, defendant's rights under the confrontation clause were not violated.

Defendant next argues that the prosecutor engaged in misconduct. We disagree. Because defendant did not object to the prosecutor's conduct at trial, this issue unpreserved and review is limited to plain error affecting substantial rights. *People v Gaines*, 306 Mich App 289, 308; 856 NW2d 222 (2014). Error requiring reversal will not be found when a curative instruction could have displaced any prejudicial effect of the prosecutor's misconduct. *People v Johnigan*, 265 Mich App 463, 467; 696 NW2d 724 (2005).

Defendant asserts that the prosecutor engaged in misconduct by (1) obtaining a conviction based on the conduct of Jennifer, (2) asking the jury to infer that defendant stole security cameras from his employer, possessed child pornography, and obstructed justice, and (3) committing a *Brady* violation by withholding evidence. We previously discussed defendant's claim regarding a *Brady* violation, *supra*, and determined that no such violation occurred. As such, this claim is not discussed further.

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Questions of prosecutorial misconduct are decided on a case-by-case basis, and a prosecutor's remarks must be evaluated in context, including the defense arguments, and their relationship to the evidence admitted at trial. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014); *Dobek*, 274 Mich App at 64. "Prosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible." *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011).

We first address whether the prosecutor obtained defendant's conviction by convincing the jury that Jennifer was a bad mother. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. *Dobek*, 274 Mich App at 63-64. However, we disagree with defendant's assertion. As discussed previously, much of the evidence relating to Jennifer was admitted in response to defendant's own admitted evidence. *Brown*, 279 Mich App at 135. In addition, a full review of the record shows that the prosecutor focused on defendant, his relationship with complainants, and his actions toward complainants, as opposed to Jennifer.

Defendant specifically complains that the prosecutor improperly admitted evidence that Jennifer had not contacted the complainants. During Richard's testimony, he testified that, pursuant to an order in Michigan, Jennifer was permitted to contact the complainants' by telephone but had not done so. Defendant objected, arguing that there was a bond condition in Pennsylvania that prevented contact between the complainants and Jennifer, but a dispute arose. Later, it was clarified that Jennifer could not contact the complainants pursuant to the bond condition, and the jury was informed. Defendant claims that Richard's contrary testimony had already prejudiced the jury. However, we disagree. Whether Jennifer had called the complainants was an ancillary issue, and only briefly discussed at trial. Further, the jury was told the correct information, curing any error. Additionally, the record shows that the prosecutor

did not know about the bond condition in Pennsylvania at the time he questioned Richard, supported by the supplemental testimony of Balogh during Richard's testimony. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 70.

Defendant next asserts that the prosecutor asked the jury to infer that defendant stole the cameras from his employer, possessed child pornography, and obstructed justice. As discussed *infra*, the prosecutor did not ask the jury to infer any of these things. The prosecutor admitted testimony from witnesses, but the witnesses did not testify to the inferences asserted by defendant, nor did the prosecutor argue these inferences at any point in the case. Accordingly, defendant's claim fails. We conclude that the prosecutor did not engage in misconduct.

Defendant next argues that he was denied his right to a fair trial because of judicial bias. "The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that appellate court reviews de novo." *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015).

The United States and Michigan Constitutions both guarantee a defendant the right to a fair and impartial trial. See US Const, Am VI; Const 1963, art 1, § 20. A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias. *Jackson*, 292 Mich App at 598. In *Stevens*, 498 Mich at 164, our Supreme Court clarified the proper analysis under which a claim of judicial misconduct is to be reviewed:

> A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. [Citations omitted.]

A fact-specific inquiry is required. *Id*. at 171. "A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id*. A reviewing court must first consider the nature or type of judicial conduct asserted. *Id*. at 172. Judicial misconduct includes the belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to one side, or biased commentary in front of the jury. *Id*. at 172-173. However, the trial court is also required to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." MRE 611(a).

Defendant points to several instances where he alleges the trial court exhibited bias. First, the trial court pierced the veil of judicial impartiality when it identified herself as a former sex crimes prosecutor, which showed the jury she was interested in obtaining a conviction. We disagree. The judge identified herself as a former prosecutor during jury selection whenever a potential juror member identified themselves as a victim of a sex crime. "The purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who

are not impartial from the jury." *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994). The trial court has discretion in both the scope and conduct of voir dire. *Id*.; MCR 6.412(C). Here, the judge was attempting to ensure that no potential juror member was familiar with her by way of her former role as a prosecutor. There was absolutely no record evidence, besides her identification of herself as a former prosecutor for the purpose of voir dire, that she was "keenly interested in obtaining the conviction of defendant." Accordingly, defendant's claim lacks merit.

Defendant raises several allegations relating to the trial court's questioning of witnesses. The trial court has the right to interrogate witnesses. MRE 614(b). The court may question witnesses to elicit additional information or clarify the witness's testimony. *People v Davis*, 216 Mich App 47, 49-50; 549 NW2d 1 (1996). "The principle limitation on a court's discretion over matters of trial conduct is that its actions not pierce the veil of judicial impartiality." *Id*. at 50. The court must ensure that its questions are not "intimidating, argumentative, prejudicial, unfair, or partial." *Id*. (citation omitted). Defendant also complains that the court's evidentiary holdings and commentary during the trial. Absent deep-seated favoritism or antagonism making the exercise of fair judgment impossible, judicial rulings or opinions are not valid grounds for alleging bias. *Gaines*, 306 Mich App at 313-314.

After reviewing the record, we conclude that the trial judge's conduct did not pierce the veil of judicial impartiality. *Stevens*, 498 Mich at 164. Considering the totality of the circumstances, it is not reasonably likely that the trial judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against defendant. *Id*. The tone and demeanor of the trial judge was respectful for the most part. While there were times when the trial judge appeared to express impatience with defendant, comments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality. *Jackson*, 292 Mich App at 598.

While we have concluded that defendant's claim lacks merit, we address defendant's specific arguments for completeness. Defendant asserts that the judge improperly asked T.S. what she meant during a portion of her testimony. Defendant claims the testimony at issue concerned other acts evidence that occurred in Pennsylvania, and was not related to the charged crimes. However, the judge may clarify witness testimony, and the court is not limited because the evidence was admitted pursuant to MRE 404(b). *Davis*, 216 Mich App at 49-50. Similarly, when the court questioned Zearfoss about whether abused children could succeed in school, the court was exercising its power to elicit additional information. Although Zearfoss' statement was damaging to the defense, the court's question itself was neutral, and the court is not limited from asking questions because the answer may be unfavorable to defendant. Defendant claims the court limited his examination of Cave regarding the complainants' "achievements." However, the record reflects that defendant was attempting to question Cave regarding whether sexually abused children can have psychological problems, which the court correctly ruled was beyond the scope of Cave's knowledge because she was not an expert witness. Defendant claims the court interrupted defendant's questioning of Dakota Vaughn, T.S.'s boyfriend, which made the jury to think less of defense counsel and encouraged the prosecutor to object to the line of questioning. However, the court merely ruled that the question asked by defendant was impermissible, and told defense counsel he could create a record outside the presence of the jury. The court's comments were neutral. Indeed, a discussion was then held and the information was deemed admissible. The exchange regarding the evidence in front of the jury was brief and non-

confrontational. Defendant claims that the judge chastised him multiple times, including an instance when she told him to learn the rules of evidence before he objected again. During the five day trial, these instances were infrequent and brief. Again, comments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality. *Jackson*, 292 Mich App at 598.

Defendant complains that the court improperly questioned Richard about how the case was initiated in Michigan, establishing that the judge knew Sergeant Burnadette Dunbeck, bolstering the credibility of Richard and the prosecutor. We disagree. During Richard's testimony, defense counsel suggested that Richard used his connections as a police officer to arrange a meeting with sex crimes unit. The prosecutor did not question Richard regarding how he arranged the meeting. The court then questioned him on that issue, and it was revealed he had spoken to Dunbeck. The record as a whole shows that the court's question was to clarify and elicit information, and the court's brief statement that she knew Dunbeck was not to suggest she had a special relationship, but to continue to clarify the situation for the jury.

Defendant complains he was improperly limited to 45 minutes for closing argument. This does not establish judicial bias, as the prosecutor was also time limited, and defendant points to nothing additional that he would have argued had he been given more time. Defendant again complains that he was limited in his questioning of Marge, but, as discussed *supra*, the trial court did not abuse its discretion in prohibiting defendant's questioning, and the trial court's holding did not exhibit bias. The questions posed to Jennifer by the court did not exhibit bias. The trial court's questioning regarding T.S.'s broken leg was brief, and clarified that no charges were brought against Jennifer, which was beneficial to defendant. Contrary to defendant's claims, the record did not show that the judge's questions indicated that she believed the complainants. The judge's questioning of defendant whether he knew how to wipe a computer was within the court's power to elicit information. Finally, the judge's reference to the "infamous bathroom incident," did not exhibit bias. In context, considering the judge's tone and demeanor, it seemed she was commenting on the amount of time and attention that had been put on this minor incident. Indeed, "infamous" does not have an inherently negative connotation.

Defendant was not denied a fair trial based on judicial bias. To the extent a specific instance raised by defendant was not addressed, we have reviewed it, and determined that it lacked merit.

We affirm defendant's convictions, but remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ Stephen L. Borrello

-16-