*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JONATHAN MICHAEL MULLEN,

Defendant-Appellant.

UNPUBLISHED
March 23, 2023

No. 359514
Charlevoix Circuit Court
LC No. 2021-018514-FH

Before: GLEICHER, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of possession with intent to deliver less than 50 grams of a controlled substance, second offense, MCL 333.7401(2)(a)(*iv*), two counts of felon in possession of a firearm, MCL 750.224f, use of a firearm during the commission of a felony, second offense, MCL 750.227f, possession of ammunition by a felon, MCL 750.224f(6), possession of a dangerous weapon, MCL 750.224(1)(a), and two counts of resisting a police officer, MCL 750.81d(1). We affirm.

## I. BACKGROUND

Defendant's convictions stem from a search of defendant's girlfriend's apartment (where defendant was staying while in the area) and a vehicle outside of the apartment in which an officer observed defendant place two duffel bags. When officers arrived at the apartment, they observed defendant rush into the bathroom and leave the bathroom soon after. During the ensuing search of the bathroom, an officer recovered bags of a substance, later confirmed to be heroin, from the toilet. The search of a bedroom in the apartment uncovered a Springfield XD pistol, and the search of the vehicle outside the apartment uncovered an AR-15 gun in one of the duffel bags in the vehicle. Testimony and pictures established that both guns belonged to defendant. Ammunition, gun accessories, and drug paraphernalia were also found in both the apartment and vehicle.

-1-

Before trial, defendant sought to suppress evidence gathered during the search on grounds that the warrant authorizing the search was insufficient.[1]  Defendant also objected to the prosecution's request to admit evidence of defendant's past drug sales and gun possession as other-acts evidence, arguing that the evidence was inadmissible under MRE 404(b) and was otherwise unfairly prejudicial under MRE 403.  The trial court denied defendant's motion to suppress the evidence obtained during the search, and overruled defendant's objection to the prosecution's other-acts evidence.

At the conclusion of trial, the jury convicted defendant as stated.  This appeal followed.

## II.  MOTION TO SUPPRESS

Defendant first challenges the trial court's ruling on his motion to suppress.  This Court reviews for clear error a trial court's factual findings to support a motion to suppress evidence, but the trial court's ultimate ruling on whether to suppress the evidence is reviewed de novo.  *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014).

Both the United States and Michigan Constitutions protect individuals from unreasonable searches and seizures.  US Const, Ams IV and XIV; Const 1963, art 1, § 11; *People v Slaughter*, 489 Mich 302, 310-311; 803 NW2d 171 (2011).  A search is unreasonable if it was conducted without a warrant and no exception to the warrant requirement applied, or if it was conducted pursuant to an invalid warrant.  *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000).  Defendant argues that the search in this case was unreasonable for the latter reason—because it was conducted pursuant to an allegedly invalid warrant.  For a warrant to be valid, it must be supported by probable cause.  *Id*. at 417.  See also US Const, Am IV; Const 1963, art 1, § 11; MCL 780.651(1).  "It is settled law that probable cause to search must exist at the time the search warrant is issued, and that probable cause exists when a person of reasonable caution would be justified in concluding that evidence of criminal conduct is in the stated place to be searched."  *People v Russo*, 439 Mich 584, 606-607; 487 NW2d 698 (1992) (citations omitted).

The affidavit for the search warrant in this case was submitted by Charlevoix County Sheriff Detective Michael Patrick, who wrote that he and another detective met with a confidential informant who "has been proven to be reliable and credible in their information" in the past.  According to Patrick, the informant identified defendant as a drug trafficker, and named the girlfriend with whom defendant stayed after traveling.  The informant told Patrick that defendant had brought "back large amounts of illegal drugs"—the informant had witnessed defendant with two ounces of methamphetamine and 40 ounces of heroin.  Patrick attested that the informant further advised that, at 8:00 p.m. the night before the affidavit was submitted, the informant witnessed defendant packaging a "ball of heroin," which, based on the informant's report, Patrick estimated was a quarter of an ounce.  The informant additionally told Patrick that defendant kept the drugs in a "steel colored lock box" that he kept with him.  The informant also provided, and Patrick confirmed, that defendant had recently been arrested for driving under the influence of

---

[1] Defendant also argued that the search of the vehicle exceeded the scope of the warrant, but he does not renew that objection to the search on appeal.

drugs in the county. Patrick added that defendant had "multiple arrests for felony weapons offenses," and that defendant's girlfriend had two handguns.

Defendant first contends that the warrant was invalid because the informant's report of a single "drug sighting" was insufficient to establish probable cause to believe that drugs would be in the residence. In support of his argument, defendant cites *People v David*, 119 Mich App 289, 295; 326 NW2d 485 (1982), in which this Court stated in pertinent part, "We are not convinced that a controlled buy alone is enough to establish probable cause for the issuance of a search warrant." Although we are not strictly bound by *David* because it was decided before 1990, see MCR 7.215(J)(1), we need not address whether *David* was rightly decided because it is distinguishable from this case. Here, the affidavit contained more information than merely one sighting of defendant with drugs at the residence. It discussed that defendant was in possession of drugs very recently, and otherwise displayed an awareness of defendant's general involvement in the drug trade, with specificity about attendant amounts, storage, and travel patterns. The affidavit also reported an additional "drug sighting," along with specific information about defendant's romantic relations and legal history, and included a general statement about the informant's reliability. In *David*, 119 Mich App at 295, this Court stated that, in addition to the controlled buy, "[t]here must be some indication of the reliability of the buyer-informant so that a conclusion that a purchase actually took place may be legitimately drawn." In this case, the magistrate was presented with evidence of the informant's credibility, along with additional evidence such as the recent drug possession and specific knowledge of several other aspects of defendant's drug-related activities, thereby distinguishing this case from *David*.[2]

Defendant persists that the affidavit did not establish the informant's credibility or the reliability of the information pursuant to the requirements of MCL 780.653. That statute requires that an affidavit with information from a confidential informant contain "affirmative allegations from which the judge or district magistrate may conclude that [1] the person spoke with personal knowledge of the information and [2] either that the unnamed person is credible or that the information is reliable." MCL 780.653. It follows that among a magistrate's considerations are "the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *People v Keller*, 479 Mich 467, 475; 739 NW2d 505 (2007) (quotation marks and citations omitted).

Personal knowledge of an informant "can be inferred from the stated facts" of the affidavit. *People v Stumpf*, 196 Mich App 218, 223; 492 NW2d 795 (1992). Additionally, "the specificity of the details provided by the informant" may be "substantial indicia to support a finding that the informant spoke from personal knowledge." *Id*. The affidavit in this case stated that the informant had seen defendant with a significant amount of heroin the evening before the trial court issued the warrant. The informant's having very recently viewed defendant with drugs implied that the informant had personal knowledge that there were drugs in the residence where defendant was located. The affidavit also provided other specific information that demonstrated the informant's

---

[2] Defendant cites other cases in support of his argument that a single "drug sighting" is not sufficient to establish probable cause, but all those cases are distinguishable for the reasons just discussed. Namely, that probable cause in this case was established by substantially more than a single "drug sighting."

personal knowledge, such as having seen defendant with large amounts of narcotics in the past that he had transported to the area, knowledge of who defendant's girlfriend was, where he stayed when in the area, what container defendant used to store drugs, and where to find that container. That the informant described not only defendant's drug-trafficking activities, but also personal details about him, could have reasonably persuaded the magistrate that the informant had extensive personal knowledge of defendant and his involvement with narcotics, including that he probably was in possession of them at his girlfriend's apartment at the relevant time. Accordingly, there was a substantial basis for the magistrate to conclude that the informant spoke with personal knowledge, satisfying the first prong of MCL 780.653.

As to whether the informant was credible and reliable, "the fact that the police previously had utilized information provided by [an] informant in other warrant requests with successful results" can provide the necessary support "for the magistrate to conclude that the informant was credible and reliable." *Stumpf*, 196 Mich App at 223. The affiant in this case attested that the informant had been "proven to be reliable and credible in their information," and that the affiant had independently verified other information provided by the informant, such as the fact that defendant had recently been arrested for driving under the influence of drugs in the county. This provided a substantial basis from which the magistrate could conclude that the informant was both credible and reliable, thus satisfying the second prong of MCL 780.653.

In summary, taking all of these facts into account and evaluating the affidavit in a commonsense and realistic manner, as well as deferring to the decision of the magistrate, we conclude that a reasonably cautious person could have concluded that there was a substantial basis for finding probable cause that evidence of defendant's drug trafficking would be found in the residence at which he was staying. *Keller*, 479 Mich at 475 (explaining that the magistrate's responsibility in considering a search warrant is "simply to make a practical, common-sense decision . . . given all the circumstances set forth in the affidavit"); *Mullen*, 282 Mich App at 21 ("A reviewing court must give great deference to a magistrate's finding of probable cause to issue a search warrant."); *People v Unger*, 278 Mich App 210, 243; 749 NW2d 272 (2008) (explaining that the reviewing court evaluates "whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause").[3]

## III. OTHER-ACTS EVIDENCE

Defendant next challenges that trial court's decision to allow the prosecution to present other-acts evidence over defendant's objection. Generally, a trial court's decision on an evidentiary issue will be reversed on appeal only when there has been an abuse of discretion. *People v Holtzman*, 234 Mich App 166, 190; 593 NW2d 617 (1999). An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

---

[3] At various points throughout his brief, defendant correctly observes that a warrant cannot be based on stale information, see *Russo*, 439 Mich at 605, but he never asserts that the information underlying the warrant in this case should have been considered stale.

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

As our Supreme Court has explained, this rule is not one of exclusion but "of inclusion that contains a nonexclusive list of 'noncharacter' grounds on which evidence may be admitted." *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998). Stated differently, the rule only precludes the use of other-acts evidence as impermissible character evidence; it does not preclude the use of such evidence for a proper, non-propensity purpose. *People v Sabin*, 463 Mich 43, 56; 614 NW2d 888 (2000).

To protect against other-acts evidence being used for an impermissible purpose, our Supreme Court "has established a procedural safeguard in the form of a four-pronged standard that a trial court must insure is satisfied before admission of other acts evidence." *Starr*, 457 Mich at 496.

> First, the prosecutor must offer the prior bad acts evidence under something other than a character or propensity theory. Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b). Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004) (quotation marks, citations, and alterations omitted).]

A proper purpose is one other than establishing the defendant's character to show his or her propensity to commit the crime. *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 725 (2005). Not all prior misconduct requires application of MRE 404(b), however. If evidence of past misconduct is "directly relevant" to a charged offense and does "not involve an intermediate inference of character, MRE 404(b) is not implicated." *People v Houston*, 261 Mich App 463, 468-469; 683 NW2d 192 (2004).

In this case, Sheriff Sergeant William Church analyzed the contents of one of defendant's cell phones, and extracted several text conversations. Church described pictures of guns, cash, baggies, and a scale, although he could not provide the dates when the images were taken. Detective Cody Wheat also examined the text messages extracted from defendant's phone. Wheat read for the jury one message sent to defendant discussing heroin and methamphetamine for sale, and defendant's response discouraging discussions about drug sales by text while encouraging the use of code words. Another text exchange occurred close in time to defendant's arrest, when defendant was in Charlevoix County, discussing defendant's obtaining a ride so that he could purchase "$2,000 for the four" in Flint. Wheat also detailed text messages discussing a scope and flash muzzle for defendant's AR-15 rifle, and defendant's purchasing heroin. Wheat reviewed

texts between defendant and his girlfriend discussing defendant's trying to obtain a ride to travel to her near the time of his arrest, but experiencing financial difficulties and wanting money for heroin, and also purchasing drugs and trading guns. Wheat further described images from defendant's phone of guns, including those seized at the apartment, and of a baggie of white powder on a digital scale.

Wheat testified that he also obtained records from defendant's Facebook account, which contained multiple images of three handguns seized from the apartment, images of defendant holding the AR-15 with a request to sight-in the gun, a request from an individual for "a gram or two" of heroin along with some other drugs, a request from another individual for up to a gram of an unspecified drug with payment by "cash app," lists of suspected informants, and more requests for heroin and methamphetamine. Wheat continued that the prospective buyer was a resident of Charlevoix County who was attempting to purchase something for $2,000, and that defendant demanded $1,000 by 5:00 p.m. or he would sell "the bag" of drugs. Wheat added that heroin commanded higher prices in Charlevoix County than it did downstate, and that defendant was communicating with his girlfriend on Facebook about how much to charge for drugs.

A. GUN PHOTOGRAPHS

Defendant argues that the images from his phone depicting guns were admitted for the improper purpose of demonstrating his character as "the kind of person who would knowingly possess . . . guns" because he had used guns in the past.

To the extent that this argument relates to the images of defendant possessing the AR-15 and Springfield XD handgun, the argument fails because those images were not subject to MRE 404(b). Defendant was facing a number of charges stemming from his possession of the AR-15 and Springfield XD handgun. To prove those charges, the prosecution had to establish that defendant, in fact, possessed those firearms. Obviously, evidence that defendant possessed the AR-15 and Springfield XD handgun is directly relevant to establishing that defendant possessed those firearms without any intermediate inference. Accordingly, MRE 404(b) is not implicated. See *Houston*, 261 Mich App at 468-469.[4]

With regard to images of guns other than the AR-15 and Springfield XD handgun, the trial court allowed their admission for the purposes of demonstrating a scheme, plan, system, knowledge, identity, or absence of mistake, reasoning that the images were evidence of defendant's "modus operandi, this is what he does, he possesses firearms," and "to identify him as the owner and possessor of these firearms as opposed to" other persons in the apartment.

---

[4] Even assuming MRE 404(b) applied to the photos of the AR-15 and Springfield XD handgun, the trial court clearly did not abuse its discretion by allowing the evidence to be admitted at trial. The photos were admissible for the non-propensity purpose of identifying defendant as at least a joint possessor of the firearms, despite that they were not on his person when found. Identifying defendant as a possessor of the firearms was clearly relevant to the charges against defendant. Lastly, evidence identifying defendant as a possessor of the firearms was highly probative, and that probative value was not substantially outweighed by the danger of any unfair prejudice.

It is a close question, under the abuse-of-discretion standard, whether the trial court erred by admitting the images of other guns under MRE 404(b). The prosecution offered proper non-propensity reasons for admitting the evidence, and the trial court accepted those reasons as demonstrated by its ruling, thereby satisfying the first prong of the standard for admissibility under MRE 404(b). As to the second prong—relevance—the bar is minimal. Evidence is relevant if it has "*any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401 (emphasis added). But, as explained by our Supreme Court:

> In the context of prior acts evidence . . . MRE 404(b) stands as a sentinel at the gate: the proffered evidence truly must be probative of something *other* than the defendant's propensity to commit the crime. If the prosecutor fails to weave a logical thread linking the prior act to the ultimate inference, the evidence must be excluded, notwithstanding its logical relevance to character. [*People v Crawford*, 458 Mich 376, 390; 582 NW2d 785 (1998).]

It is questionable whether the prosecution satisfied this burden in this case.[5] We need not resolve this close question, however, because even if images of the other guns were improperly admitted, defendant is not entitled to appellate relief.

A preserved evidentiary error does not merit reversal in a criminal case unless it appears that it is "more probable than not that the error was outcome determinative." *People v Lukity*, 460

---

[5] For instance, the prosecution contends that the images of defendant possessing other guns and drugs demonstrates defendant's "scheme" of "using his guns to protect his possession and sale of drugs." Yet it is unclear how the photos themselves demonstrate this. The photos depict only defendant possessing guns. While the guns are sometimes next to drugs, nothing about the photos suggest a "scheme" to use the "guns to protect [defendant's] possession and sale of" the drugs.

The prosecution alternatively contends that the images of defendant possessing other guns established defendant's knowledge and intent to possess the guns found in this case by invoking the doctrine of chances; the prosecution asserts that "the evidence of other guns admitted here demonstrates an objective improbability that [defendant] unknowingly possessed the AR-15 and the Springfield XD" handgun. Our Supreme Court, however, has cautioned against the use of the doctrine of chances because "the theory is prone to abuse and may result in the admission of character evidence in disguise[.]" *Crawford*, 458 Mich at 394. To avoid such abuse, the doctrine should be invoked only after the prosecution persuasively shows "that each uncharged incident is similar to the charged offense and that the accused has been involved in such incidents more frequently than the typical person." *Id*. (quotation makes and citation omitted). It is questionable whether the prosecution made such a showing in this case. Moreover, given that the prosecution's argument for similarity is that the images of the other guns "depicted the same conduct as the charged offenses—gun possession," it could be reasonably argued that the prosecution's invocation of the doctrine of chances is nothing more than an attempt to admit "character evidence in disguise[.]" *Id*. That is, it could be reasonably argued that the prosecution sought to admit evidence of defendant's past possession of guns because, if he possessed guns in the past, it made it more likely that he possessed the guns found in this case.

Mich 484, 495-496; 596 NW2d 607 (1999). See also MCL 769.26. Assuming that the images of other guns from defendant's phone were improperly admitted, the non-tainted evidence still overwhelmingly demonstrated that defendant possessed the AR-15 and Springfield XD handgun that were found in the search. A friend in the apartment testified that she knew that defendant's AR-15 and handgun were in the apartment. Defendant's girlfriend testified that defendant had an AR-15 at the residence, which she had packed into a bag. A police officer testified that he observed defendant put a bag into a vehicle, and later searched the bag to find the AR-15. Defendant's girlfriend stated that defendant had a second gun, a Springfield XD handgun, in the back bedroom, and ammunition in the apartment. A police officer testified that he discovered the Springfield XD handgun, and an AR-15 magazine, in a closet in the back bedroom, and also two loaded AR-15 magazines in defendant's backpack. Finally, two witnesses testified that defendant told them, in the days following the search, that he had been caught with an AR-15. Accordingly, we conclude that, assuming the images of the other guns from defendant's phone were improperly admitted, the error was not outcome determinative and did not result in a miscarriage of justice.

## B. EVIDENCE OF OTHER DRUG TRANSACTIONS

Defendant next argues that his text messages and Facebook messages were admitted for the improper purpose of demonstrating his character as "the kind of person who would knowingly possess drugs . . . and intend to deliver large amounts of drugs" because he had been around drugs in the past.

We conclude that the trial court did not abuse its discretion by allowing the admission of evidence of drug transactions found on defendant's phone and Facebook messages. Again, Wheat testified about text messages on defendant's phone that discussed defendant's buying and selling heroin and methamphetamine, including in a different part of the state, and also about messages from defendant's Facebook account regarding individuals, including one from Charlevoix, who asked to purchase heroin, methamphetamine, and other drugs from defendant.

As to the first prong of the standard for admissibility under MRE 404(b), the trial court properly concluded that the evidence was offered for the non-propensity purpose of demonstrating defendant's intent to distribute the narcotics found during the search. As to the second prong, evidence of past drug transactions may be relevant to whether a defendant intended to distribute drugs. See, e.g., *People v Williams*, 240 Mich App 316, 324; 614 NW2d 647 (2000). Here, evidence of defendant's participation in the acquisition and sale of narcotics, including evidence that he had recently sold drugs in Charlevoix County as demonstrated in the messages, gave rise to a reasonable inference that defendant intended to distribute the narcotics he possessed. Thus, the evidence of defendant negotiating and planning drug transactions in the challenged messages was relevant to the charged crime of possession with intent to distribute.

Defendant argues that evidence that he sold drugs in the past was not relevant because it does not negate the possibility that he intended to use the drugs found during the search for personal consumption, and did not intend to distribute the drugs. While defendant is of course correct, evidence need not conclusively establish the existence of a fact in question in order to be relevant. Rather, evidence is relevant if it has "*any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401 (emphasis added). Evidence of defendant's participation in

the sale of narcotics made it more likely that defendant intended to sell the drugs found in his possession during the search for the reasons explained.

Turning to the third prong of the standard for admissibility under MRE 404(b), we conclude that the risk of unfair prejudice was not substantially outweighed by the significant probative value of the challenged evidence regarding defendant's intent. See MRE 403. The evidence was highly probative—it demonstrated the likelihood that defendant intended to distribute the controlled substances found during the search. In contrast, the danger of unfair prejudice was minimal. While the evidence was, like most relevant evidence, damaging to defendant, " '[u]nfair prejudice' does not mean 'damaging.' " *Lewis v Legrow*, 258 Mich App 175, 199; 670 NW2d 675 (2003). Rather, evidence is unfairly prejudicial if it goes beyond the merits of the case to inject issues broader than the defendant's guilt or innocence, such as "bias, sympathy, anger, or shock." *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005). The evidence depicting defendant's activities with narcotics did not inject issues beyond defendant's guilt or innocence into the case. While defendant argues that evidence he sold drugs in the past implied to the jury that defendant "is a drug dealer," the trial court instructed the jury that the evidence was only to be used for limited non-propensity purposes, and not to infer that defendant was a bad person. Juries are presumed to follow their instructions. *Unger*, 278 Mich App at 237.

For these reasons, the trial court did not abuse its discretion by admitting evidence of drug activity as displayed in defendant's text messages and social media.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado